Jeanette BUSSEN, Plaintiff,

v.

SOUTH CENTRAL BELL TELEPHONE COMPANY, Defendant.

Civ. A. No. S86–1062(GN).

United States District Court,
S.D. Mississippi, S.D.

Dec. 18, 1987.

Jack Parsons, Parsons & Matthews, Wiggins, Miss., for plaintiff.

Henry Laird, Mize, Thompson & Blass, Gulfport, Miss., for defendant.

## MEMORANDUM OPINION

DAN M. RUSSELL, JR., District Judge.

This action was removed to this Court from the Circuit Court of Harrison County, Mississippi. The plaintiff, Jeanette Bussen (now Jeanette Bussen–Smith but hereinafter "Jeanette Bussen"), initially sued Pat Carrol (now Pat Carrol Bussen but hereinafter "Pat Carrol") and South Central Bell Telephone Company (hereinafter "South Central Bell"). The plaintiff and Pat Carrol finalized their actions against each other by executing mutual Covenants Not to Sue on or about August 19, 1986. Pat Carrol was thereafter dismissed as a party defendant, thus creating diversity between the plaintiff and defendant South Central Bell.

This action was tried before this Court, without a jury, on November 2 and 3, 1987. The Court, after having considered the pleadings, the testimony of the witnesses presented, arguments of the parties, and the applicable law, now enters its Findings of Facts and Conclusions of Law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure and 28 U.S.C. Sections 1332 and 1441.

## FINDINGS OF FACTS

1. The testimony of Pat Carrol represented that she had been a service representative for approximately fifteen (15) years prior to her employment, in August of 1982, by South Central Bell for whom she became a service representative in its Gulfport office.

2. Pat Carrol was periodically reviewed on South Central Bell's policy regarding proprietary information. This information was complied in a document known as the Personal Responsibility and Proprietary Information Booklet. Pat Carrol was last reviewed on this document in April of 1982. The booklet primarily provided that no employee of South Central Bell was to disclose or improperly use any information learned through his or her employment for personal gain in that such information belonged to South Central Bell and was confidential.

3. In July of 1982 Jeanette Bussen and Don Bussen separated. In August of 1982, Pat Carrol and Don Bussen met and in late October, or early November, they began living together. On November 2, 1982, the plaintiff and Don Bussen's divorce became final.

4. On January 13, 1983, Don Bussen made two telephone calls to the Pascagoula residence of one Gordon Smith while the plaintiff was at said residence. The number called was 762–3794 which was a listed number. The calls were made from a listing at Pat Carroll's residence, telephone number 832–5603. Don Bussen used this listing belonging to Pat Carrol while he was living at her residence. The plaintiff testified the first call from Don Bussen came at approximately 9:00 p.m. It is undisputed that Don Bussen received Gordon Smith's telephone number from his son, Victor.

5. In February of 1983, various calls were made between the plaintiff, Pat Carrol and Don Bussen. On February 9, 1983, Pat Carrol called the plaintiff to warn her that Don Bussen had been drinking heavily and might be coming to Lucedale. This call is not among those of which the plaintiff complains were abusive or harassing.

This call was made by Pat Carrol from a South Central Bell number other than her own and charged to a friend's credit card.

6. In mid-February Don Bussen moved from Pat Carrol's residence to one of his own. On February 21, 1983, Don Bussen received telephone number 762-6464 at his new apartment in Pascagoula.

7. On March 1, 1983, the plaintiff requested that her telephone number be changed. The telephone number to be changed was 947-8351 which was a private listing[1] that she and Don Bussen had previously shared for twelve years at their residence. Said number was of course known to Don Bussen.

8. On March 4, 1983, the plaintiff's number was changed from 947-8351 to 947-7353. This new number was also a private number. The plaintiff received a telephone call from Don Bussen at this new number at approximately 6:45 or 7:00 p.m. on the evening of March 4, 1983. Pat Carrol testified without objection that Don Bussen got the new number from his son, Victor.

9. This call prompted the plaintiff to call Don Roberts of South Central Bell and to complain that she had received harassing calls. This call to Don Roberts resulted in South Central Bell's Security Department being notified of the problem on March 8, 1983. The complaint was given to Jim Milner who began an immediate investigation. Jim Milner attempted to contact the plaintiff but she was out of town. In the meantime, the plaintiff had requested that the 947-7353 number be changed and on March 10, 1983, her "7353" number was changed to 947-8078.

10. The plaintiff was contacted by Jim Milner on March 11, 1983, when she returned to her home. Milner requested that plaintiff's number be changed once more so that he could monitor the use on this new number. Therefore, on March 11, 1983, the plaintiff's number was changed from 947-8078 to 947-8360.

11. On May 23, 1983, Pat Carrol was suspended for thirty (30) days by South Central Bell.

12. On July 30, 1983, Pat Carrol and Don Bussen were married.

13. The plaintiff testified that since her separation in July of 1982 from Don Bussen they had not lived together. She also recognized that Don Bussen was aware of the 947-8351 number because this was the private number shared during their marriage. The plaintiff also testified that she and Don Bussen were not in communication with each other and they were living their own lives; however, the testimony did reveal that on March 26, 1983, the plaintiff and her son attended a concert with Don Bussen. The plaintiff stated that she received telephone calls from her ex-husband, Don Bussen, through the end of February and that it became so bad she could not stand it. It was at this time that the plaintiff requested that her number be changed.

14. The plaintiff stated she gave the new number she received on March 4, 1983, to Sears and to her mother. She denied giving the new number of March 4, 1983, to Don Bussen.

15. Pat Carrol testified that the plaintiff's son, Victor, also had the new number on March 4, 1983.

16. The plaintiff testified that on and after March 5, she received phone calls daily, at all hours, but the people did not always identify themselves. The plaintiff stated that she could identify most of the calls as being from Pat Carrol from previous calls. The plaintiff stated Pat Carrol would state basically the same message each time. These type calls continued for approximately six (6) months from January through July, 1983.[2] The plaintiff stated

---

1. The testimony of Pat Carrol characterized a "private" listing as one that is not given out over the phone by the operator and does not appear in the telephone directory. She further stated that an "unlisted" telephone number is given out over the phone but does not appear in the direc-tory, while a "regular" telephone number is given out over the phone and does appear in the directory.

2. The plaintiff claimed that on March 1, 1983, she received a hang up call. At trial the plaintiff included that the hang up call could be

these calls made a mess of her personal life and frustrated her ability to concentrate on her business.

17. The plaintiff testified that she was having problems with her business and that her contract with Sears, which was renewed annually, was put into jeopardy. These problems as well as the volume of business, became overwhelming for the plaintiff and resulted in her decision to sell her business.

18. The plaintiff also testified about problems with her emotional state and her nerves during the time she was receiving the calls which caused her to see a doctor. She testified that she developed shingles.

19. Under cross-examination, and using notes she had herself prepared, the plaintiff characterized the number of calls she received at her personal number "daily" from Pat Carrol, after March 5, 1983, as approximately twenty-five (25), or between fifteen (15) and twenty (20). She testified that calls she received at work from Pat Carrol she was unable to record.

20. A copy of answers to interrogatories propounded to the plaintiff by the defendant South Central Bell signed under oath and dated June 5, 1984, was then introduced at trial. Interrogatory No. 2 asked:

Question: Describe with specificity each and every telephone call you allege Pat Carrol to have made which harassed and threatened you and/or your friends, giving dates and times of the telephone calls.

Answer: On February 9, 1983 at 6:00 a.m. and 8:00 a.m., Pat Carrol called; March 1, 1983—hang up calls; March 3, 1983 at 3:30 a.m., Pat Carrol called; March 3, 1983 at 4:00 a.m., Pat Carrol called; *March 5, 1983 in the morning, Pat Carrol called;* March 17, 1983 at night—hang up call; March 21, 1983 at night—hang up call; March 26, 1983, three hang up calls; May 4, 1983 in the morning—hang up calls; May 14, 1983 at midnight—hang up call; June 1, 1983—

three hang up calls; June 4, 1983 at 9:30 a.m.—hang up call; June 5, 1983 between 7:00 and 8:00 p.m.—hang up—three hang up calls; July 7, 1983 at 2:55 p.m.—hang up call; and July 10, 1983 at midnight—hang up call.

21. Following the introduction of Interrogatory No. 2, the plaintiff testified that now she could identify subsequent calls she received as being from Pat Carrol. These included, but were not limited to, the following:

On March 5 at 8:30 a.m.; March 17, in the evening; March 21 in the evening; and May 4 and May 14.

She stated she could identify the caller as being Pat Carrol because she recognized the voice of Pat Carrol and the names were the same as those Pat Carrol had used on prior calls.

22. The defendant South Central Bell presented a statement to the plaintiff which she signed, dated April 20, 1983, which read in pertinent part:

Since I have had my telephone number changed to 947–8360, I have not received any calls that I can say came from my ex-husband, Don Bussen, or from Pat Carroll. I have received several hang up calls and wrong number calls, but I don't know who the caller was.

A copy of this statement was admitted into evidence. The plaintiff stated in response to this impeachment or rebuttal statement that when she made this statement she was disturbed and did not know from whom the calls came. She stated that later she did not want to tell Mr. Milner who the calls were from because it was the telephone company's job to investigate.

The plaintiff stated that Jim Milner should have said something about the discrepancies and that he never did.

Further, the plaintiff stated the April 20, 1983, statement was not true.

23. Pat Carrol Bussen testified at trial that she did look at the plaintiff's billing system by accessing, on an available com-

identified as one from Pat Carrol and this caller, and the one on March 17, called the plaintiff

names such as "bitch, whore, slut."

puter terminal, South Central Bell's Business Office Customer Records Information System ("BOCRIS"). She stated she looked at plaintiff's records "out of curiosity." She also stated that she was aware that South Central Bell prohibited employee's from divulging customer information or improperly using customer information for personal gain. She stated she was aware that such a disclosure could result in an employee being fired.

24. Pat Carrol denied giving any customer information to Don Bussen or placing any calls to the plaintiff subsequent to the plaintiff's initial change of telephone number on March 4, 1983. The evidence reflects that between March 11, 1983, and April 20, 1983, Pat Carrol accessed various records of the plaintiff contained in BOCRIS; however, these records showed only the time and places called during the previous February, 1983 billing cycle. Pat Carrol denied making any calls to the plaintiff except to plaintiff's "8351" number which had appeared on her telephone bill due to calls made by Don Bussen to the plaintiff. Pat Carrol admitted she knew the unlisted numbers after March 11, 1983, but that she never used them, wrote them down, or gave the numbers to anyone else.

25. Jim Milner testified for the defendant South Central Bell. He was in South Central Bell's Security Department in March of 1983 and handled the plaintiff's complaints. The complaints included that Pat Carrol had harassed the plaintiff via the telephone and had passed confidential information from the plaintiff's personal telephone account to the plaintiff's ex-husband. Jim Milner testified that it was significant that the residence of the alleged parties making the calls and the residence of the plaintiff were diverse to each other.[3] Thus, any calls made long distance between these residences would generate toll or long distance records.

26. Jim Milner outlined the date and change of the plaintiff's telephone numbers until he obtained the 947-8360 number in order to monitor and control calls being placed to said number and records accessed involving the number. Milner also provided a summary of South Central Bell's computer records showing all phone calls made from October of 1982, through September of 1983, by all of the parties involved.

27. Jim Milner's records showed all calls originating from or terminating to a particular number which enabled him to identify all calls received by the plaintiff at any of the numbers she had used. These records indicated that there were no calls from Pat Carrol's residence or a South Central Bell Gulfport telephone to the plaintiff's residence or business after March of 1983.

Furthermore, Jim Milner testified that his investigation also included reviewing all toll or long distance telephone calls made from pay phones or any other phones to the plaintiff's residence and that no such calls had been placed.

28. Jim Milner stated that during his investigation when he contacted the plaintiff she never complained about harassing calls from Pat Carrol or Don Bussen but only mentioned unidentifiable hang up calls. He stated that the plaintiff never contacted him with any problems, as he had asked her to do, with the exception of one call on March 26 from the plaintiff to inform him that her son, Victor, had gotten a private line installed and to let him know that Pat Carrol had supposedly called Victor's number.

29. Milner testified that on April 20, he called the plaintiff and and she stated that there was no need to continue monitoring her calls because Don Bussen had been given Victor's number and was able to get in touch with her through Victor.

30. Jim Milner testified that BOCRIS records must be accessible to service representatives so that they can answer any question a customer has about his bill or service.

---

**3.** The plaintiff lived in Lucedale, Mississippi. Don Bussen lived with Pat Carrol at her residence in Gulfport, Mississippi, until approximately February 20 when he moved to Pascagoula, Mississippi. Gordon Smith lived in Pascagoula.

31. Jim Milner also testified that his investigation revealed that it was never established that Pat Carrol disclosed confidential customer information to Don Bussen, and that Pat Carrol denied ever doing so. However, because his investigation showed that it was possible that Pat Carrol, on March 4, 1983, had given Don Bussen plaintiff's 947–7353 number, South Central Bell had suspended Pat Carrol for thirty (30) days without pay.

## CONCLUSIONS OF LAW

The Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1332 and 1441(c). The plaintiff contends the issues before the Court are whether the employer, South Central Bell, should be responsible for action on behalf of the employee and whether South Central Bell has breached its duty and obligation of privacy to the plaintiff.

The plaintiff alleges there has been an invasion upon her privacy and that she has suffered actual damages as a direct and proximate cause of this intrusion in the sum of $20,000.00. Further, the plaintiff alleges that she has suffered emotional damages in the sum of $20,000.00.

The defendant correctly submits that § 652 of the Restatement of Torts 2d recognizes four types of invasion of privacy which are:

1. The intentional intrusion upon the solitude or seclusion of another;
2. The appropriation of another's identity for an unpermitted use;
3. The public disclosure of private fact; and
4. Holding another in the public eye in a false light

Mississippi has acknowledged "false light" as one recognized theory of recovery but has not confronted the question of whether it will recognize this theory. *Prescott v. Bay St. Louis Newspapers, Inc.*, 497 So.2d 77, 79 (Miss.1986).

The defendant submits that only an intentional intrusion upon the solitude or seclusion of another or public disclosure of private facts could conceivably fall within the plaintiff's complaint.

The Restatement of Torts 2d § 652B sets forth the elements of invasion of privacy by intrusion upon seclusion as:

One who intentionally intrudes, physically or otherwise, upon the solitude of seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.

Comment d to § 652B provides:

d. There is likewise no liability unless the interference with the plaintiff's seclusion is a substantial one, of a kind that would be highly offensive to the ordinary reasonable man, as the result of conduct to which the reasonable man would strongly object. Thus, *there is no liability* for knocking at the plaintiff's door, or calling him to the telephone on one occasion or even two or three, to demand payment of a debt. *It is only when the telephone calls are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff,* that becomes a substantial burden to his existence that his privacy is invaded. (Emphasis added).

As to publicity given to private life, § 652D provides the following elements:

One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that

(a) would be highly offensive to a reasonable person, and

(b) is not of legitimate concern to the public.

Comment a of § 652D provides, in part, that:

'[p]ublication' ... includes any communication by the defendant to a third person. 'Publicity,' on the other hand, means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge.

The defendant contends that there is no evidence whatsoever that South Central Bell did anything to intrude upon the

plaintiff's seclusion and that any liability can only be derivative as it would have to be based upon any acts or omissions of its former employee, Pat Carrol.

The defendant contends that there is no evidence indicating an invasion of privacy based upon any actions or inactions of Pat Carrol. It is clear that the plaintiff only complained to the telephone company about one call, allegedly made on March 4, 1983, which she identified as being made by her ex-husband and as a result of Pat Carrol's actions. The other calls she distinguished, both in her Interrogatory No. 2 answer and her April 20, 1983 statement, as being unidentifiable. Only at trial did the plaintiff identify a March 5, 1983, call as coming from Pat Carrol as well as various hang up calls.

All other calls made on dates prior to March 4 were either ones of which the plaintiff does not complain as being harassing, or were made to the plaintiff and her ex-husband's private number of twelve (12) years. The Court is of the opinion that these calls are far too few in number to constitute a "pattern of harassment 'or a communication of such a nature as to possess a vicious quality. (citations omitted).' " *Burris v. South Central Bell Telephone Co.,* 540 F.Supp. 905, 910 (S.D.Miss. 1982).

■ In any event, the evidence indicates that Pat Carrol only accessed the plaintiff's billing records and that she did not divulge the information. Further, even if Pat Carrol's actions did constitute an invasion upon the plaintiff's privacy, the Court is also of the opinion that no liability would attach to South Central Bell. The law is well settled in Mississippi that a master is liable for the acts of a servant *when* they are done "in the furtherance of his employer's business, and within the real or apparent scope of his employment." *Marter v. Scott, et al.,* 514 So.2d 1240, 1242 (Miss.1987). *See also*

*Odier v. Sumrall,* 353 So.2d 1370 (Miss. 1978); *Thomas–Kincannon–Elkin Drug Co., Inc. v. Hendrix,* 168 So. 287 (Miss. 1936).

Pat Carrol was neither authorized to access the plaintiff's billing or toll records nor empowered to divulge such information. Pat Carrol had stepped aside from her master's work. *Seedkem South Inc. v. Lee,* 391 So.2d 990, 995 (Miss.1980) (citing *International Shoe Co. v. Harrison,* 63 So.2d 837, 217 Miss. 152 (1953)). She had departed from her employer's business for purposes of her own. *Id.*

■ Finally, although no liability has attached to the defendant, the Court is compelled to find that the plaintiff did not prove any damages. The plaintiff's invasion of privacy claim was not supported by any damages, and the testimony offered at trial is not sufficient to establish that the plaintiff is entitled to damages for any emotional distress suffered as a result of any acts of the defendant South Central Bell or its employee.

The plaintiff testified that during the time the alleged phone calls were made she was nervous, disturbed, and saw a doctor concerning a medical condition known as shingles. Absent any actual impact, to recover damages for mental distress the plaintiff must show at the very least,[4] that she sustained a genuine physical injury as a result of the acts of the defendant or its employee for whom it was liable. *Sears, Roebuck & Company v. Young,* 384 So.2d 69, 73 (Miss.1980). Further, punitive damages would not be warranted as the plaintiff has neither proved any mental suffering by her which was accompanied by a physical injury proximately caused by the defendant, nor any misconduct by the defendant that was willful, gross, or wanton. *Jackson v. Johns–Manville Sales Corporation,* 781 F.2d 394, 414 (5th Cir.),[5] *cert.*

4. The plaintiff's complaint sounds in negligent infliction of emotional distress as it alleges the plaintiff "was humiliated, upset and harassed" by defendant South Central Bell's negligent acts. Complaint, COUNT TWO, Paragraph XI.

5. The plaintiff's complaint alleges that the conduct of Pat Carrol, and the consent of the defendant South Central Bell, constituted a reckless and willful disregard of the plaintiff's rights. Complaint, COUNT THREE, Paragraph XIII.

*denied,* in —— U.S. ——, 106 S.Ct. 3339, 92 L.Ed.2d 743 (1986).

Therefore, for the reasons stated above, judgment will be entered in favor of the defendant South Central Bell Telephone Company.

### JUDGMENT

This action came on for trial before the Court, Honorable Dan M. Russell, Jr., District Judge, presiding, and the issues having been duly tried and a decision having been duly rendered as stated in the Court's Memorandum Opinion of December 18, 1987.

IT IS HEREBY ORDERED AND ADJUDGED

That the plaintiff take nothing, that the action be dismissed on the merits, and that each party shall bear their own costs of this action.