ALAN J. SCHLESINGER *vs.* MERRILL LYNCH, PIERCE, FENNER & SMITH, INC.

Middlesex. December 4, 1990. - March 11, 1991.

Present: LIACOS, C.J., WILKINS, ABRAMS, O'CONNOR, & GREANEY, JJ.

*Privacy. Statute,* Construction.

An attorney who sought to enjoin representatives of a stock brokerage firm from placing telephone calls to him at his law office to solicit the sale of securities was not entitled to relief under G. L. c. 214, § 1B, on the ground that his privacy had been invaded where, in view of the infrequency and brevity of the calls, their courteous and businesslike nature, the fact that the attorney to some extent had relinquished his legitimate expectations of privacy, and the fact that the calls did not disrupt the attorney's daily routine or the conduct of his law practice, the brokerage firm's conduct was neither a "substantial" nor a "serious" interference with the attorney's privacy. [517-522]

CIVIL ACTION commenced in the Superior Court Department on June 2, 1988.

The case was heard by *Robert J. Hallisey,* J., on a motion for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Bryan G. Killian* (*A. Neil Hartzell* with him) for the defendant.

*Alan J. Schlesinger,* pro se.

GREANEY, J. The plaintiff, Alan J. Schlesinger, filed a complaint in the Superior Court seeking to enjoin representatives of the defendant, Merrill Lynch, Pierce, Fenner & Smith, Inc., from calling him on the telephone at his law office to solicit the sale of securities. After discovery was completed, the defendant moved for summary judgment pursuant to Mass. R. Civ. P. 56 (b), 365 Mass. 824 (1974). A judge of

the Superior Court granted summary judgment in favor of the plaintiff, and entered an order permanently enjoining the defendant from making telephone calls to the plaintiff's office. The defendant has appealed, and we transferred the case to this court on our own motion. We agree with the defendant that scattered telephone calls to the plaintiff's place of business over a period of years did not constitute an actionable invasion of the plaintiff's privacy under G. L. c. 214, § 1B (1988 ed.). Because the defendant was entitled to judgment as matter of law, we reverse the order and direct the entry of judgment for the defendant.

The material facts are not in dispute. The plaintiff is an attorney whose office is in Newton. For several years the plaintiff, who has previously purchased and owned securities, received telephone calls from sales representatives of the defendant, at the rate of three to five per year. Before May, 1988, the plaintiff did not keep specific records of the names of the callers and dates of the calls. After that date, he was able to identify three specific calls occurring on May 23, 1988, June 3, 1988, and August 11, 1988. The plaintiff has no recollection of any other specific calls, but indicated generally that he received calls three to five times per year from the defendant's representatives. These were "cold calls" attempting to sell him securities, and they were made only to the plaintiff's law office. The plaintiff has a receptionist who answers all his telephone calls. The defendant's representatives sometimes did not identify themselves or their purpose in calling when speaking to the receptionist.

It is the plaintiff's policy to take all his calls, even if the caller does not identify himself or herself to the receptionist, because any caller might be a potential client who wishes to speak confidentially with the plaintiff. Consistent with this policy, the plaintiff accepted or returned all the calls from the defendant's representatives, including one which required the plaintiff to make a toll call to New York. The calls were brief, concerned only business, and did not have any effect on the plaintiff's daily routine or the conduct of his law practice.

On December 6, 1984, the plaintiff wrote to the defendant, indicating that he did not wish to buy securities and did not wish to be called by the defendant's sales representatives for any purpose. The calls continued, however, and the plaintiff wrote a second letter on November 10, 1985, demanding that the defendant's representatives stop their telephone solicitations. The calls still continued. The defendant employs over 10,000 sales representatives who solicit business by calling customers and potential customers on the telephone. The representatives often obtain their lists of persons to call from sources other than the defendant.[1] The plaintiff's recollection of the callers' identities indicates that the calls were made by different people.

On this record, the judge concluded that the plaintiff was entitled to summary judgment and entered the permanent injunction at issue.[2] The question before us is one of law —

[1]Because of this, the defendant claims that it is practically impossible to ensure that any person will not be called. It has no control over the lists that sales representatives use when soliciting potential customers on the telephone.

[2]Some information concerning subsequent proceedings should be noted. Prior to oral argument of the appeal, we allowed the defendant's motion to take judicial notice of further proceedings in the case. On October 23, 1990, after the entry of this appeal, the defendant was found in civil contempt and ordered to pay compensation of $10 to the plaintiff. The Superior Court judge who entered this order found that on September 7, 1990, a sales representative of the defendant called the plaintiff at his office. This representative was unaware of the injunction, and, when told about it, apologized profusely and promptly ended the conversation. The judge found that the defendant had circulated to its representatives a number of memoranda informing them of the terms of the injunction and directing them not to call the plaintiff; that the large number of representatives employed by the defendant, and turnover among them, resulted in unintended calls; and that the plaintiff, because of the nature of his law practice, was a preferred "target" of solicitation. The judge noted that the call on September 7, 1990, was only the second such call the plaintiff had received in the approximately fourteen months that had elapsed since the entry of the injunction. The judge concluded that the "defendant has made reasonable efforts to avoid violating the terms of the injunction and that, those reasonable efforts notwithstanding, the telephone call of September 7 resulted from an oversight." Nevertheless, the judge found the defendant in contempt, and he assessed $1.00 as compensation and $9.00 as reimbursement for the plaintiff's expenses.

whether on the undisputed facts, a violation of G. L. c. 214, § 1B, has been established so as to support the entry of the permanent injunction.[3]

General Laws c. 214, § 1B (1988 ed.), the privacy statute, provides in full that "[a] person shall have a right against unreasonable, substantial or serious interference with his privacy. The superior court shall have jurisdiction in equity to enforce such right and in connection therewith to award damages." The judge agreed with the plaintiff's theory of liability under the statute, which was essentially that the defendant's telephone calls to his office interfered with his privacy because they constituted an intrusion on his solitude and violated his interest in being left alone. We have not yet addressed this precise theory under the statute.[4]

The plaintiff claims that the adjectives "unreasonable," "substantial," and "serious" are all connected by the disjunctive "or" and, therefore, set forth three alternative standards under the statute. Under the plaintiff's reading of the statute, an interference which falls under any one of the standards would constitute a violation. The plaintiff goes on to argue that the defendant's conduct was at least unreasonable and that alone justified a permanent injunction.

We reject the plaintiff's interpretation because it would lead to illogical results and would be inconsistent with the purposes and policies of the statute. See *Chipman* v. *Massachusetts Bay Transp. Auth.*, 366 Mass. 253, 256 (1974); 2A

---

[3]The contempt judgment described above is not before us. Also not before us is the claim in the plaintiff's complaint that the actions of the defendant's representatives constituted a nuisance for which he was entitled to the remedy of abatement. The parties have not addressed this issue, confining themselves only to the issue of the application of G. L. c. 214, § 1B, to the facts.

[4]The bulk of Massachusetts cases under the statute have concerned the gathering and dissemination of information which the plaintiffs contended was private. See, e.g., *Bally* v. *Northeastern Univ.*, 403 Mass. 713, 720-721 (1989); *Jones* v. *Taibbi*, 400 Mass. 786, 801 (1987); *Bratt* v. *International Business Machs. Corp.*, 392 Mass. 508, 518-519 (1984); *Cort* v. *Bristol-Myers Co.*, 385 Mass. 300, 307 n.9 (1982); *Hastings & Sons Publishing Co.* v. *City Treasurer of Lynn*, 374 Mass. 812, 819 (1978).

Sutherland Statutory Construction § 45.12, at 54 (4th ed. 1984). The statute obviously was not intended to prohibit serious or substantial interferences which are reasonable or justified. For example, the statute would not apply to a search and seizure — clearly a serious and substantial interference with privacy — when it is performed pursuant to constitutional requirements and is otherwise reasonable. See *O'Connor* v. *Police Comm'r of Boston*, 408 Mass. 324, 330 (1990) ("We think that it is highly unlikely that the Legislature intended to provide a right of action to a person whose privacy was substantially or seriously interfered with, but reasonably so"). Likewise, we doubt that the Legislature intended to commit scarce judicial resources to preventing an interference which could be characterized as unreasonable, but which is only trivial or insubstantial.[5] See *Cort* v. *Bristol-Myers Co.*, 385 Mass. 300, 308 (1982) (the degree of intrusion is important in finding a violation of the statute).

In applying the statute, we follow the rules that "matters of punctuation are not necessarily determinative," see *Globe Newspaper Co.* v. *Boston Retirement Bd.*, 388 Mass. 427, 432 (1983); Sutherland, *supra* § 47.15 at 157, and that a

---

[5]See Note, The Massachusetts Right of Privacy Statute: Decoy or Ugly Duckling?, 9 Suffolk U.L. Rev. 1248 (1975), where the author states at 1267 n.93:

"The fact that the adjectives [in G. L. c. 214, § 1B] are in the disjunctive rather than cumulative naturally leads one to suppose that if the interference satisfies any one of them it will be actionable. However, if one gives those adjectives a natural interpretation, this turns out not to be the case, as shown. Would an unreasonable interference with privacy be actionable even though not substantial or serious? Suppose A tells B in confidence of plans to secretly marry X. Suppose, too, that B reports this confidence to a newspaper which publishes it, and that neither A nor X suffers harm. Can A successfully bring an action against B? The violation of confidence was dishonorable and unreasonable under the circumstances, but it was also trivial."

Compare Arzt, Privacy Law in Massachusetts: Territorial, Informational and Decisional Rights, 70 Mass. L. Rev. 173 (1986), where the author states at 175: "The adjective 'unreasonable' can be understood to subsume the concepts of 'substantial' and 'serious' interference found in . . . G. L. c. 214, § 1B."

literal construction which leads to unreasonable results is to be avoided when "the language to be construed 'is fairly susceptible to a construction that would lead to a logical and sensible result.'" *Lexington* v. *Bedford*, 378 Mass. 562, 570 (1979), quoting *Bell* v. *Treasurer of Cambridge*, 310 Mass. 484, 489 (1941). We also take into account that the Legislature appears to have framed the statute in broad terms so that the courts can develop the law thereunder on a case-by-case basis, by balancing relevant factors, see *Bratt* v. *International Business Machs. Corp.*, 392 Mass. 508, 520 (1984), and by considering prevailing societal values and the ability to enter orders which are practical and capable of reasonable enforcement.

In reviewing the present injunction under the statute, we choose to turn first to the question we find dispositive — whether, on the undisputed facts, the defendant's intrusion was serious or substantial. We note initially that the defendant's representatives called the plaintiff only three to five times per year — on the average, less than once every two to four months. The calls were brief in duration, had a legitimate business purpose, and did not disrupt the plaintiff's daily routine or the conduct of his law practice. Clearly, no pattern of harassment is present. See Restatement (Second) of Torts § 652B comment d (1977); *Bussen* v. *South Cent. Bell Tel. Co.*, 682 F. Supp. 319, 325 (S.D. Miss. 1987); *Donnel* v. *Lara*, 703 S.W.2d 257, 259-260 (Tex. Ct. App. 1985). Furthermore, the calls were not calculated to annoy or disturb, but rather were polite and businesslike.[6]

---

[6]The majority of telephone harassment cases involve creditors attempting to secure the payment of bills by debtors. These cases are not directly on point because the debtor knows that the creditor may take action to collect the debt and thus has a lower expectation of privacy than the person who receives unsolicited telephone calls attempting to sell things to him. Nonetheless, the factors examined in those cases are relevant to this case. The most important factors are the context of the calls, what is said by the caller, and how many calls were made. See, e.g., *Jacksonville State Bank* v. *Barnwell*, 481 So. 2d 863, 866 (Ala. 1985); *CBM of Cent. Arkansas* v. *Bemel*, 274 Ark. 223 (1981); *Household Fin. Corp.* v. *Bridge*, 252 Md. 531, 540-542 (1969); *Sofka* v. *Thal*, 662 S.W.2d 502, 510-511 (Mo.

It is also important to recognize, as a general proposition, that "in an industrial and densely populated society, some intrusions into one's private sphere are inevitable." R. Rodman, Procedural Forms § 1051, at 491 (1990). Thus, some uninvited outside contacts are to be expected, and not every intrusion will constitute a legally cognizable violation of privacy. See *Kelley* v. *Post Publishing Co.*, 327 Mass. 275, 278 (1951) ("The law does not provide a remedy for every annoyance that occurs in everyday life. Many things which are distressing or may be lacking in propriety or good taste are not actionable"). See also *Nader* v. *General Motors Corp.*, 25 N.Y. 2d 560, 565-566 (1970). Telephone solicitations are an often unpleasant fact of modern life that must be faced by anyone who has a telephone and permits the telephone number to be listed in directories accessible to the general public. See *Sofka* v. *Thal*, 662 S.W.2d 502, 509 (Mo. 1983) ("Repeated telephone calls are an accepted feature of everyday life, and maintaining telephone service evidences the expectation if not the hope of calls from time to time").

This is particularly true of professional and commercial establishments, where the expectation and likelihood of receiving telephone solicitations is greater than in private homes. By owning and listing a business telephone, and by permitting the telephone number to be public information, the plaintiff has held himself out to receive calls and has lessened his expectation of privacy. He could not reasonably expect to be free from all, or even most, annoying telephone solicitations. See *Brady* v. *Hearst Corp.*, 281 F. Supp. 637, 641 (D. Mass. 1968). See also *DeAngelo* v. *Fortney*, 357 Pa. Super. 127, 131 (1986). The plaintiff, for example, should reasonably expect that other businesses would make contact with him at his law office and would try to interest him in products and services, such as office supplies, law books, computer programs and bookkeeping and billing services.

---

1983); *Montgomery Ward* v. *Shope*, 286 N.W.2d 806, 808-810 (S.D. 1979).

In addition, because of his policy of accepting or returning calls from people whom he does not know, the plaintiff has further diminished his expectation of privacy. Although not directly on point, past cases recognize that a person may relinquish a privacy right by engaging in certain activities, or by placing himself in certain contexts where his legitimate expectation of privacy is reduced. See, e.g., *Tower* v. *Hirschhorn*, 397 Mass. 581, 589 n.9 (1986) (suggesting, but not resolving, possibility that plaintiff, by commencing tort action, may have waived a statutory right of privacy as to medical records); *Pottle* v. *School Comm. of Braintree*, 395 Mass. 861, 866 (1985) ("Public employees, by virtue of their public employment, have diminished expectations of privacy"); *Broderick* v. *Police Comm'r of Boston*, 368 Mass. 33, 44 (1975), cert. denied, 423 U.S. 1048 (1976) (right of privacy may be surrendered by public display); *Cefalu* v. *Globe Newspaper Co.*, 8 Mass. App. Ct. 71, 77, further appellate review denied, 379 Mass. 925 (1979), appeal dismissed and cert. denied, 444 U.S. 1060 (1980) ("The appearance of a person in a public place necessarily involves doffing the cloak of privacy which the law protects").

We agree that the defendant should have acted more promptly in responding to the plaintiff's written requests to cease communications, notwithstanding the defendant's contention that it is virtually impossible for it to enforce a "do-not-call" order among its 10,000 or so representatives. However, in view of the infrequency and brevity of the calls, their courteous and businesslike nature, the fact that the plaintiff to some extent had relinquished his legitimate expectations of privacy, and the fact that the calls did not disrupt the plaintiff's daily routine or the conduct of his law practice, we conclude that the defendant's conduct was neither a "substantial" nor a "serious" interference with the plaintiff's privacy. This conclusion precludes relief under G. L. c. 214, § 1B, and makes it unnecessary to decide whether the de-

fendant's behavior was "unreasonable" under the statute[7] or whether, as the defendant claims, it was engaging in protected commercial speech under the First Amendment to the United States Constitution. As a final note, we emphasize that our decision is limited to the business situation in which this case arises, and it intimates no view as to other cases involving vendor solicitations made by telephone to a private residence.

The grant of summary judgment for the plaintiff and the entry of the permanent injunction are reversed. Judgment is to be entered for the defendant.

*So ordered*

---

[7]The plaintiff has included materials in his brief which describe consumer reaction to the increase in telemarketing and some legislative and regulatory response to the reaction. See, e.g., G. L. c. 159, § 19C (1988 ed.), providing that a customer of a common carrier who does not wish to receive telephone calls from an automatic dialing machine may notify the carrier that he does not wish to receive such calls, and Fla. Stat. § 501.059 (1988), limiting the nature and length of unsolicited consumer telephone calls intended to sell consumer goods or services. The information provided by the plaintiff indicates that legislatures are addressing some aspects of the use of telemarketing which have proved particularly annoying to consumers. We make no statement concerning how such materials are to be viewed when weighing the reasonableness of interferences with privacy.