Butler, J.
Plaintiff, Chandra Priestley (Priestley), brings this action alleging that State Trooper James S. Doucette (Doucette) wrongfully stopped her on motorcycle, which she was driving on the Massachusetts Turnpike, in violation of her right to be free from unreasonable search and seizures under the Fourth Amendment of the United States Constitution. As a result of the stop, and the subsequent investigation of Trooper Doucette’s conduct, Priestley contends that the actions of Doucette and other members of the Massachusetts State Police constituted a violation- of her civil rights pursuant to 42 U.S.C. §1983 (Count I); G.L.c. 93, §102 and G.L.c. 12, §111 (Count II); negligent infliction of emotional distress (Count III); intentional infliction of emotional distress (Count IV); invasion of privacy pursuant to G.L.c. 214, §13 (Count V); and assault and false imprisonment by Doucette and the investigating officer (Count VI). Defendants Frank P. Baran (Baran) Charles F. Henderson (Henderson), and the Massachusetts State Police now move to dismiss Counts I through V pursuant to Mass.R. Civ.P. 12(b)(6).
BACKGROUND
The complaint contains the following allegations:
On June 17,1992, at approximately 6 P.M. Priestley was driving on her motorcycle on the Massachusetts Turnpike. State Trooper Doucette pulled up behind Priestley and instructed her to pull over and stop. After both vehicles came to a rest, Doucette asked Priestley to show him her motorcycle safety inspection sticker. After examining the sticker, Doucette stated to Priestley “ladies don’t ride motorcycles.” As Priestley prepared to leave, Doucette again stated “ladies don’t ride motorcycles."
After the incident, Priestley filed a written grievance pursuant to Massachusetts State Police procedure, and an investigation followed by State Trooper John Cunningham (Cunningham). Cunningham arranged a meeting with Priestley during which she was interrogated as to why she would falsely accuse a “good trooper.” Her grievance against Doucette was denied. Captain Frank P. Baran sent Priestley a letter informing her that'Cunningham’s investigation revealed that Doucette complied -with established guidelines and procedures of the State Police. Colonel Henderson, the supervisor of Doucette, was forwarded the report. On August 20, 1992, Priestley sent a letter to Commissioner Lawrance Giordano, Department of Public Safety, and Colonel Henderson, as an act of Presentment pursuant to G.L.c. 258, §4.
DISCUSSION
When evaluating the sufficiency of a complaint pursuant to Mass.R.Civ.P. 12(b)(6), the court must take the allegations of the complaint, as well as any inference which can be drawn from those allegations in the plaintiffs favor as true. Eyal v. Helen Broadcasting Corp., 411 Mass. 426, 429 (1991). The complaint should not be dismissed for failure to state a claim “unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle him to relief.” Nader v. Citron, 372 Mass. 96, 98 (1977), quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957). That any portion of a complaint survives a motion to dismiss is not by any means indicative of the viability of the plaintiffs claims when challenged by a motion for summary judgment or consideration at trial.
I. 42 U.S.C. §1983 violations (Count I).
The defendants contend that they cannot be sued in their official capacities under 42 U.S.C. §1983 and that the portion of count I purporting to sue them in their official capacity must be dismissed. 42 U.S.C. §1983 provides in relevant part:
Every person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .
42 U.S.C. §1983
Suit brought under 42 U.S.C. §1983 must be brought against a person. A suit against an official in his or her official capacity is not a suit against that official but is really a suit against that official’s office. Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989). Accordingly, neither a State nor its officials acting in their official capacities are “persons” under §1983 and may not be sued under that statute. Id. So much of Count I that attempts to sue the State Police or its agents in their official capacities is dismissed.
State officials, however, who are sued in their individual capacities, are persons within the meaning of §1983. Hafer v. Melo, 112 S.Ct. 358, 365 (1991). To establish personal liabiliiy in a §1983 action, the plaintiff must demonstrate that the officials, acting under color of state law, caused the deprivation of a federal right. Id. at 362.
In the case at bar, Baran and Henderson were acting in a supervising capacity. The law is well established that the doctrine of respondeat superior does not apply to claims under §1983. Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 209 (1st Cir. 1990). Supervisors can be held liable for the unconstitutional misconduct of its employees only on the basis of an “affirmative link” between their acts and those of the offending employee. Id. Supervisory liability must be based upon the supervisors’ own acts or omissions amounting to “reckless or callous indifference to the constitutional rights of others.” Id.
To determine whether Baran and Henderson are personally liable for the acts of Doucette, Priestley *417 must demonstrate that Doucette’s conduct violated the Fourth Amendment right to be free from unreasonable search and seizure and that the supervisors’ failure to act amounted to reckless or callous indifference to Priestley’s rights.
In viewing the facts in the complaint in a light most favorable to Priestley, Doucette’s conduct may arise to an unreasonable search and seizure in violation of the Fourth Amendment of the United States Constitution. In Delaware v. Prouse, 440 U.S. 648 (1979), the United States Supreme Court held that unless the police have “at least articulable and reasonable suspicion that a motorist is unlicensed or that the automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his driver’s license and the registration of the automobile are unreasonable under the Fourth Amendment.” Id. at 663. The Supreme Judicial Court adopted this standard in Commonwealth v. McGeoghan, 389 Mass. 137 (1983); see Commonwealth v. Shields, 402 Mass. 162, 171 (1988).
In Prouse, the Supreme Court also discussed similar reasons for stopping motor vehicles, such as to inquire whether vehicle safeiy inspection requirements are being observed. Prouse, supra at 658-59. The Court determined that there are other alternatives that could be used to enforce driving regulations other than random spot checks, such as the police acting upon an observed traffic violation. Id. at 659. Although the Court only mentioned the unreasonableness of random spot checks for licenses and registrations in its holding, the rationale is applicable to inspection stickers. The Court’s discussion infers that random stops to check safety inspection stickers, without at least articulable and reasonable suspicion on the part of the police officer that the motorist does not have a valid sticker, would be unreasonable under the Fourth Amendment of the Constitution. Priestley’s complaint alleges that Doucette stopped her, not on an articulable or reasonable suspicion that she was driving an unin-spected motorcycle, but on the basis of State Police policy. In accordance with Prouse, Doucette may have violated Priestley’s right to be free from unreasonable search and seizure even though Doucette presumably was following official procedures.
Whether Doucette’s misconduct may be attributed to his supervisors must be examined. Henderson’s and Baran’s actions must amount to a reckless or callous disregard for Priestley’s rights for Priestley to prevail. The act of Doucette in stopping Priestley was part of the policy and procedure that may be unconstitutional. In a broad reading of the complaint, which is required for a motion to dismiss, it can be inferred that Baran and Henderson, as supervisors, condoned, if not encouraged, the allegedly unconstitutional practice of Doucette. See Bordanaro v. McLeod, 871 F.2d 1151, 1157 (1st Cir. 1989) (supervisor allowing unconstitutional conduct of officers to continue pursuant to an official policy amounts to a deliberate indifference to citizens’ constitutional rights); Forand v. O’Brien, 602 F.Supp. 1182, 1185 (1st Cir. 1985) (supervisors may be personally liable under §1983 if they adopted an unconstitutional policy or condoned unconstitutional acts of their subordinates). By condoning Doucette’s conduct, an affirmative link has been established between the street-level misconduct and the action, or inaction, of the supervisoiy officials. Gutierrez-Rodriguez v. Cartagena, 882, F.2d 553, 562 (1st Cir. 1989). Where an official policy is the moving force of the constitutional violation, the policy makers and supervisory officials of that policy may be personally responsible under §1983 for implementing such a policy. Monell v. Dept. of Soc. Serv. of City of N.Y., 436 U.S. 658, 694 (1978). The pleadings in the case at bar allege, by inference, that Henderson and Baran implemented a policy that is unconstitutional, demonstrating a callous indifference to Priestley’s right to be free from unreasonable search and seizure. The motion to dismiss so much of count I alleging Henderson and Baran are personally responsible is denied.
II. G.L.c. 93, §102 and G.L.c. 12, §111 (Count II).
Priestley contends that the conduct of the defendants violated her right to equal protection under G.L.c. 93, §102.
General laws c. 93, §102 provides in relevant part:
All persons within the Commonwealth, regardless of sex, race, color, creed, or national origin shall have . . . the same rights enjoyed by white male citizens tó make and enforce contracts, to inherit . . . and to the full and equal benefit of all laws and proceedings for the security of all persons and punishment. . .
G.L.c. 93, § 102(a)
Priestley fails to allege how this statute applies to her claim. She was not prevented from making or enforcing contracts, and has not been denied equal benefits of all the laws and proceedings in Massachusetts for her claim. See Harvard Law School Coalition for Civil Rights v. President and Fellows of Harvard College, 413 Mass. 66, 70-72 (1991). So much of Count II that applies to G.L.c. 93, §102 is dismissed.
Count II further alleges the defendants violated G.L.c. 12, §111.
General laws c. 12, §1II provides in relevant part:
Any person whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or rights secured by the Constitution or laws of the Commonwealth, has been interfered with, or attempted to be interfered with, as described in section 11H may institute and prosecute in his own name and on his own behalf a civil action for injunctive and other appropriate equitable relief... *418 including the award of compensatory money damages.
G.L.c. 12, §111.
G.L.c. 12, §11H as it is incorporated into G.L.c. 12, §111, allows a cause of action when a person acting under color of law attempts to interfere with a person’s rights secured under the federal or State Constitution, by threats, intimidation or coercion. Id.
As a matter of law, the Commonwealth and its agents acting in their official capacity are not “persons” for purpose of G.L.c. 12, §§11H and 111. Commonwealth v. Elm Medical Laboratories, Inc., 33 Mass.App.Ct. 71, 76-78 (1992). Accordingly, so much of Count II alleging that the State Police and Henderson and Baran acting "within their official capacities violated G.L.c. 12, §111 is dismissed.
Priestley’s claim alleging that the defendants individually violated her civil rights under G.L. 12, §1II is sufficient to survive this motion. The legislature intended to provide a remedy under G.L.c. 12, §111, coextensive with 42 U.S.C. §1983 (except the federal statute requires state action while its state counterpart does not). Duarte v. Healy, 405 Mass. 43, 46-47 (1989). In light of the court’s ruling concerning Count I, the defendants’ motion to dismiss so much of Count II alleging that Henderson and Baran in their individual capacities violated G.L.c. 12, §111 is denied.
III.Negligent Infliction of Emotional Distress (Count III).
Count III of Priestley’s complaint alleges negligent infliction of emotional distress against the State Police, and Henderson and Baran. General Laws c. 258, §2 states in relevant part:
The remedies provided by this chapter shall be exclusive of any other civil action ... by no such public employee shall be liable for any injuiy or loss of property or personal property injury or death caused by his negligent or wrongful act or omission while acting within the scope of his office or employment . . .
G.L.c. 258, §32.
General laws c. 258 is the sole remedy against public employees acting negligently in the scope of their employment. Accordingly, the defendants cannot be held personally liable and so much of Count III alleging Henderson and Baran are personally liable is dismissed. Pruner v. Clerk of the Superior Court in the County of Norfolk, 382 Mass. 309, 313 (1981).
The Massachusetts Torts Claim Act also requires that actual presentment of the claim against a public employee be made to the Executive Officer of the employee or presented to the Attorney General. G.L.c. 258, §4. Executive officer is defined as “the secretary of the Executive Office.” G.L.c. 258, §1. The presentment requirement is strictly construed and may not be satisfied by constructive notice. Berube v. City of Northampton, 413 Mass. 635, 637-38 (1992).
In the case at bar, Priestley sent notice to Commissioner Lawrence Giordano of the Department of Public Safety and Henderson. “A civil action shall not be instituted against a public employee . . . unless the claimant shall have first presented his claim in writing to the executive officer of such public employee ... [or] to the attorney general.” G.L.c. 258, §4. Presentment to an executive office is insufficient because it must be made on the secretary of the executive office. Weaver v. Commonwealth, 387 Mass. 43, 46-47 (1982). Accordingly, Priestley should have presented her claim to the Secretary of the Executive Office of Public Safety or to the Attorney General. Because she did not do so, Count III is dismissed.
IV.Intentional Infliction of Emotional Distress (Count IV).
Priestley contends that all of the defendants’ conduct amounted to intentional infliction of emotional distress upon her. Since G.L.c. 258, § 10(c) prohibits actions against public employers for intentional torts committed by a public employee, Count IV must be dismissed against the State Police. Tilton v. Town of Franklin, 24 Mass.App.Ct. 110, 112 (1987).
In order for a plaintiff to prevail on a claim of intentional infliction of emotional distress against Henderson and Baran, the following must be shown: (1) the defendant intended to inflict emotional distress or knew or should have known that emotional distress was likely to occur; (2) the defendant’s conduct was “extreme and outrageous” beyond all possible bounds of decency and was “utterly intolerable in a civilized society”; (3) the actions of the defendant caused the plaintiffs distress; and (4) the distress was so severe that no reasonable person could be expected to endure it. Agis v. Howard Johnson Co., 371 Mass. 140, 144-45 (1971).
Priestley’s complaint does not allege that Baran or Henderson instituted or implemented the offending policy. However, even if they condoned the conduct at issue here, the random stopping of motorcyclists to check inspection stickers does not rise to the level of such “extreme and outrageous conduct” to withstand the motion to dismiss. Accordingly, Count IV shall be dismissed.
V.G.L.c. 214, §1B Invasion of Privacy (CountV).
Priestley contends that the acts of the defendants constitute an invasion of privacy in violation of G.L.c. 214, §1B, General Laws c. 214, §1B states that a “person shall have a right against unreasonable, substantial or serious interference with his privacy ...” G.L.c. 214, §1B.
The defendants contend that even if Priestley’s right to privacy under G.L.c. 214, §1B was violated, they have retained their immunity to suit under G.L.c. 258, §10(b), because the acts amounted to a discretionary function of a governmental employee acting within the *419 scope of his employment. A careful reading of G.L.c. 258, §10(c) reveals that G.L.c. 258 will not apply to claims for invasion of privacy. G.L.c. 258, §10(c). Therefore, Count V is dismissed as it applies to the State Police.
However, while public employers may not be held liable for intentional torts committed by their employees, the employees may personally be liable for the harm they have caused. Spring v. Geriatric Authority of Holyoke, 394 Mass. 274, 284-85 (1985). In Schlesinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 409 Mass. 514 (1991), the Supreme Judicial Court determined G.L.c. 214, §1B. would be inapplicable to a search and seizure, which is clearly a serious and substantial interference with privacy, when it is performed pursuant to constitutional requirements and is otherwise reasonable. Id. at 518. Sound logic dictates that the Court’s discussion infers that G.L.c. 214, §1B would apply to unreasonable search and seizures. Priestley’s complaint alleges that the policy of the State Police randomly stopping motorcycles to check inspection stickers amounts to an unreasonable search and seizure as enunciated in Prouse.[2] Accordingly, since G.L.c. 214, §1B is applicable to unreasonable search and seizures as discussed in Schlesinger, and the complaint alleges Doucette’s stopping Priestley possibly violated the proper standard to stop vehicles as enunciated in Prouse, the defendants’ motion to dismiss the claims against Baran and Henderson is denied.
Injunctive Relief
Priestley’s amended complaint prays for damages and for the court to issue an injunction “stopping the random stopping and motorcyclists without probable cause.” Priestley alleges she was subject to an unreasonable search and seizure that is standard policy. There is no motion before this court for injunctive relief and that issue shall not be adjudicated at this time.
ORDER
For the foregoing reasons, this court ORDERS that:
1. With respect to Count I, alleging actions against the State Police and Charles F. Henderson and Frank P. Baran in their official capacities, the defendants’ motion to dismiss is ALLOWED. The defendants’ motion to dismiss Henderson and Baran in their individual capacities is DENIED as to Count I.
2. With respect to Count II, alleging violations of G.L.c. 93, §102, the defendants’ motion to dismiss is ALLOWED.
With respect to Count II, alleging violations of G.L.c. 12, §111, the defendants’ motion to dismiss the claims against the State Police and Henderson and Baran in their official capacities is ALLOWED. The plaintiffs claims against Henderson and Baran individually in Count VI shall not be dismissed at this time; defendant’s motion as to those particular claims in Count II is DENIED.
3. With respect to Count III, alleging negligent infliction of emotional distress, the defendants’ motion to dismiss is ALLOWED.
4. With respect to Count IV, alleging intentional infliction of emotional distress, the defendants’ motion to dismiss is ALLOWED.
5. With respect to Count V, alleging invasion of privacy, the defendants’ motion to dismiss the claims against the State Police is ALLOWED. The defendants’ motion to dismiss the claims against Henderson and Baran from Count V is DENIED.

 At this point in the proceedings it remains unclear whether Baran and Henderson implemented the policy of stopping motorcycles to examine safety inspection stickers or whether they are immune from suit for performing a discretionary function. Qualified immunity applies to civil rights violations as well as invasion of privacy claims. Duarte, supra at 44. In Duarte, the Supreme Judicial Court considered whether supervisors were entitled to qualified immunity from suit for implementing a drug testing policy that was later determined as unconstitutional in violation of G.L.c. 12 §§11H, 111 and G.L.c. 214, §1B.
Governmental officials are immune from suit for performing discretionary functions. Duarte at 47. To determine whether a supervisor was performing a discretionary function that resulted in a violation of civil rights, a two-part test has been established. The objective element of the test requires a determination as to whether at the time of the offense, the law was clearly established that such a policy violated the plaintiffs constitutional rights. Id. The subjective element of the test requires a determination as to whether the official actually knew the law was established forbidding such a policy. Id. If the law was clearly established and the supervisor failed to prove extraordinary circumstances for justifying a lack of knowledge of the law, the immunity defense fails. Dobos v. Driscoll, 404 Mass. 634, 646 (1989). A motion for summary judgment on the remaining claims would better enable the court to determine whether Baran and Henderson were performing discretionary functions, entitling them to qualified immunity.
The court in Duarte also examined whether discretionary functions at common law prevented the defendant from bringing suit for invasion of privacy under G.L.c. 214, §1B. Duarte at 49. The court determined that the implementation of the drug testing policy was an act of discretion and that the supervisors acted in good faith. Id. at 50. For this motion to dismiss, neither party has addressed whether the policy is constitutional and if the supervisors were performing a discretionary function. Accordingly, at this time the defendants’ motion to dismiss Baran and Henderson from Count V is denied.