Neel, Stephen E., J.
The plaintiff, Jenalyn Howes (“Howes”), filed this action against Eileen M. Chesley (“Chesley"), Theresa Randall a/k/a Theresa Sommers Randall f/k/aTheresa Sommers (“Sommers Randall”), Suzan Cybulski (“Cybulski”), Barbara Guarino (“Guarino”), and Correctional Medical Services, Inc. (“CMS”) for damages arising from a visual strip search and other alleged conduct at MCI-Framingham on May 15, 2000. The case is before the court on a motion for partial summary judgment submitted by Guarino, Cybulski, and Sommers Randall (“defendants”). For the reasons set forth below, the motion will be denied.
BACKGROUND
The evidence most favorable to Howes, the nonmovant, is summarized as follows. On May 15, 2000, Howes was arrested in Melrose pursuant to a default warrant issued by the Quincy District Court for her alleged failure to pay $209.94in restitution relating to abounced check. Melrose police officers took Howes to the police station for booking, then to Malden District Court. From there the Middlesex County Sheriffs Department transported Howes to MCI-Framingham, a medium-security prison for women, for the night.
At MCI-Framingham, Howes was subjected to MCIFramingham’s intake procedure, which included a visual strip search and visual body cavity search. The search was performed in privacy by Sommers Randall, a female corrections officer. During the search, there was no physical contact between Howes and Sommers Randall. After the search, Howes provided a witnessed urine sample for a pregnancy test and she was given institutional clothing and a shower. Howes claims that Sommers Randall also ordered her to give a fecal sample and watched her as she showered, which Sommers Randall denies.
After showering, Howes was taken to the Nurse Chesley’s office, where Chesley performed a routine medical screening. Howes claims that Cybulski, a female corrections officer, then performed a digital search of Howes’ vagina and rectum in Chesley’s presence. Cybulski and Chesley deny that such a search was performed. The admission process at MCIFramingham did not include taking fecal specimens or conducting physical body cavily searches.
The following morning, the Norfolk County Sheriff s Department officers transported Howes to the Quincy District Court, where she paid a portion of the restitution she owed.
At all material times, Guarino was the Superintendent of MCI-Framingham.
*351 DISCUSSION
I.Summary Judgment Standard
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Mass.R-Civ.P. 56(c); Cassesso v. Commissioner of Corrections, 390 Mass. 419, 422 (1983); Community Nat'l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
The present motion does not address Howes’ claims that Sommers Randall ordered her to defecate and watched her shower, and that Cybulski digitally searched Howes’ rectum and vagina. The defendants’ motion is directed at their undisputed conduct — the visual strip search — on the ground that, as a matter of law, visual strip searches of all admittees to MCIFramingham, including detainees such as Howe, were not unreasonable and unlawful.
II.Counts I and II: Violation of 42 U.S.C. §1983 Against Sommers Randall and Guarino
In pertinent part, 42 U.S.C. §1983 states that “Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ...” “A claim under section 1983 has two essential elements. First, the challenged conduct must be attributable to a person acting under color of state law . . . [and] second, the conduct must have worked a denial of rights secured by the Constitution or by federal law.” Soto v. Flores, 103 F.3d 1056, 1061-62 (1st Cir. 1997) (citations omitted).
There is no question in the present case that Sommers Randall and Guarino, as employees of MCI-Framingham, were acting under the color of law. The issue at hand is whether, as a matter of law, their conduct denied Howes’ rights secured by the Constitution.
The factual scenario of Roberts v. Rhode Island, 239 F.3d 107 (1st Cir. 2001), is quite similar to that in the present case. In Roberts, the plaintiff was a passenger in a car that was stopped for having an expired registration sticker. The police discovered through a computer check that Roberts was the subject of a warrant for failing to appear at a judicial proceeding; the police placed him into custody and performed a pat-down frisk. Roberts was transported to the Intake Services Center at the Adult Correctional Institution in Cranston, Rhode Island, where he was photographed, fingerprinted, and asked to submit to a blood test which he refused. Roberts was then subjected to a strip search and a visual body cavity search. Officers inspected the inside of Roberts’ mouth and nose and the soles of his feet. The officers also ordered Roberts to spread his buttocks to enable the officers to make a visual cavity search. No contraband was found on his person; Roberts was subjected to a similar search later the same day before being transferred and released. Rhode Island did not have regional facilities to house pretrial detainees; because Rhode Island had a unified prison system, pretrial detainees mixed with the general population of the prison.
In determining whether the corrections officers violated Roberts’ Fourth Amendment right against unreasonable searches and seizures, the court considered a balancing test set out in Bell v. Wolfish, 441 U.S. 520, 559 (1979). The Beil balancing test states that in determining the reasonableness of a search, courts must balance “the need for the particular search against the invasion of personal rights that the search entails,” and courts must “consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.” Bell, 441 U.S. at 559. In considering the Beil balancing test, the First Circuit decided that Roberts’ constitutional rights had been violated by the strip search. Roberts, 239 F.3d at 111. Weighing the factors in Bell and the extensive record provided by the parties, this court cannot say as a matter of law that the visual strip search did not violate Howes’ rights under the Constitution. Sommers Randall and Guarino’s motion for partial summary judgment on Howes’ claim of violation of 42 U.S.C. §1983 will therefore be denied.
III.Qualified Immunity
The defendants have invoked the doctrine of qualified immunity in the event that the court declines to grant summary judgment on Howes’ §1983 claim. In determining whether a party is entitled to qualified immunity, the court must consider three questions: (1) whether a. constitutional right was violated; (2) if so, whether the constitutional right in question clearly was established at the time of the alleged violation; and (3) whether a reasonable similarly-situated official would understand that the challenged conduct violated that established right. Hope v. Peltzer, 536 U.S. 730, 736-39 (2002). Defendants’ qualified immunity argument is based principally on the latter two questions.[2]
The defendants argue that Howes’ constitutional right to be free from a strip search in the circumstances of this case was not clearly established because the First *352 Circuit’s decision in Roberts had not yet issued at the time Howes was searched. The test is not so narrow:
For a constitutional right to be clearly established, its contours “must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, see Mitchell [v. Forsyth, 472 U.S. 511,] 535, n. 12; but it is to say that in the light of pre-existing law the unlawfulness must be apparent.”
Hope, 536 U.S. at 739, quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987) (emphasis supplied). Although Roberts had not yet been decided, the First Circuit’s decision in Swain v. Spinney, 117 F.3d 1 (1997), had been published almost three years prior to Howes’ arrest and visual strip search. In Swain, the First Circuit recognized “that strip and visual body cavity searches impinge seriously upon the values that the Fourth Amendment was meant to protect.” Swain, 117 F.3d at 6. Furthermore, the First Circuit held that “it is clear that at least the reasonable suspicion standard governs strip and visual body cavity searches in the arrestee context . . .” Id. at 7. In light of Swain, Howes’ right as a pre-arraignment arrestee to be free from strip and visual body cavity searches, absent reasonable suspicion, was clearly established at the time of her arrest.
The analysis of the third prong of the qualified immunity test is closely related to that of the second prong. The court concludes that a reasonable, similarly-situated official would have been aware of the First Circuit’s decision in Swain and would therefore have been on notice that the policy of strip searching every incoming inmate, regardless of suspicion, was unconstitutional.
IV. Count V: Violation of the Massachusetts Civil Rights Act (“MCRA”), G.L.c. 12, §11H-I
To prevail under MCRA, plaintiffs must prove that (1) their exercise or enjoyment of rights secured by the Constitution or laws of either the United States or of the Commonwealth, (2) have been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by ‘threats, intimidation or coercion. The MCRA is coextensive with 42 U.S.C. §1983, except that the Federal statute requires State action whereas its State counterpart does not, and the derogation of secured rights must occur by threats, intimidation or coercion. A direct violation of civil rights is not, without a showing of coercive behavior, actionable. However arrest and detention is intrinsically coercive for MCRA purposes.
Sietins v. Joseph, 238 F.Sup.2d 366, 377-78 (D.Mass. 2003) (internal quotations and citations omitted).
As discussed above, the summary judgment record on Howes’ claim of violation of 42 U.S.C. §1983 demonstrates genuine issues of material fact. The same issues of fact, together with issues of fact regarding intimidation or coercion, defeat the defendants’ motion for summary judgment as to the claim under MCRA. See Bell, supra, 394 Mass. at 181.
V. Count VIII: Violation of G.L.c. 214, §1B
Section IB of G.L.c. 214 provides a cause of action for invasion of privacy. In order to prove a statutory claim of invasion of privacy, a person must allege an unreasonable, substantial, and serious interference with his or her privacy. Ayash v. Dana-Farber Cancer Institute, 443 Mass. 367, 382 (2005). The causes of action encompassed by G.L.c. 214, §1B are determined on a case-by-case basis. Schlesinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 409 Mass. 514, 519 (1991). In this case, genuine issues of material fact remain as to the privacy claim.

ORDER

For the foregoing reasons, the defendants’ motion for partial summary judgment is DENIED.

 As set out above regarding Howes’ claim of violation of §1983, the court cannot say as a matter of law that Howes was not deprived of her constitutional nght to be free of unreasonable searches.