OLAF K. OLSEN & another[1] vs. BELL TELEPHONE
LABORATORIES, INC. & another;[2] WESTERN ELECTRIC
COMPANY, third-party defendant.

Suffolk.    October 8, 1982. — February 15, 1983.

Present: HENNESSEY, C.J., WILKINS, LIACOS, NOLAN, & O'CONNOR, JJ.

*Limitations, Statute of. Negligence,* Harmful substance, Causing loss of
consortium. *Husband and Wife,* Consortium.

A cause of action in tort for negligence causing an insidious occupational
disease, bronchial asthma, through the plaintiff's exposure to a certain
toxic substance in the course of his employment, accrued for the pur-
pose of G. L. c. 260, § 2A, on the date the plaintiff discovered or
should reasonably have discovered that he had contracted asthma as a
result of the defendants' conduct, and not on the later date when the
plaintiff discovered that his asthmatic condition was permanent.
[174-176]
In a summary judgment proceeding with respect to a wife's claim for loss
of consortium, resulting from the defendants' alleged negligence in ex-
posing her husband to a toxic substance, the relevant documents estab-
lished that her cause of action was barred by the statute of limitations,
G. L. c. 260, § 2A. [176-177]

CIVIL ACTION commenced in the Superior Court Depart-
ment on June 30, 1980.

The case was heard by *Abrams,* J., on motions for sum-
mary judgment.

The Supreme Judicial Court granted a request for direct
appellate review.

*Henry T. Dunker, Jr.,* for the plaintiffs.
*Cynthia J. Cohen* for N. L. Industries, Inc.
*Edward Woll, Jr. (Frank J. Bailey* with him) for Bell Tele-
phone Laboratories, Inc.

---

[1] Virginia N. Olsen.

[2] N. L. Industries, Inc.

O'CONNOR, J.  The plaintiffs, Olaf K. Olsen (Olsen) and Virginia N. Olsen, commenced this action on June 30, 1980. The complaint alleges that Olsen contracted asthma from exposure to a substance known as TDI[3] in the course of his employment by Western Electric Company, due to negligence and breach of implied warranties on the part of the defendants.  The condition is claimed to be permanent.  The Olsens allege that N. L. Industries, Inc., being the successor to the company that supplied TDI to Western Electric Company is liable to them, and that Bell Telephone Laboratories, Inc. (Bell Labs), by recommending its use is also liable.  Damages are sought by Olsen for personal injuries and by Virginia N. Olsen for loss of consortium.

The defendants filed motions to dismiss for failure to state a claim upon which relief can be granted.  Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974).  Numerous affidavits and counter affidavits were filed, as well as interrogatories and answers thereto, and responses to requests to admit facts. The motions were treated as motions for summary judgment under Mass. R. Civ. P. 56, 365 Mass. 824 (1974), as provided in Mass. R. Civ. P. 12 (b).  No issue is raised regarding the propriety of this procedure.  The plaintiffs appeal from the allowance of the motions.  We allowed the parties' request for direct appellate review.  Since the plaintiffs have neither briefed nor argued the issue whether the warranty claims are barred, the only issue before us on appeal is whether their claims for negligence and loss of consortium are barred by the statute of limitations, G. L. c. 260, § 2A.  We hold that the plaintiffs' claims are barred and we affirm the judgments.

The following facts were established by the pleadings, answers to interrogatories, admissions, and affidavits. Mass. R. Civ. P. 56 (c).  Olsen was employed by Western Electric Company from October, 1961, until February, 1974, when he became an inactive employee on sick leave.  From 1961 to 1972, he worked in the transformer potting and encapsu-

---

[3] Toluene diisocyanate.

lating department. His responsibilities included engineering the process for potting and encapsulating transformers. Sometime, about 1962, he requested Bell Labs to recommend a compound for potting transformers that would require less curing time and would enable the production of transformers at a faster rate. Bell Labs recommended a compound containing TDI. Western Electric Company purchased the compound from Baker Castor Oil Co., the predecessor to N. L. Industries, Inc. The compound was used in Olsen's department from 1964 to 1972.

Olsen was exposed to TDI from 1964 to April, 1972, although his exposure was greatly reduced beginning in March, 1970. Olsen had experienced symptoms associated with TDI asthma as early as 1968. These symptoms had become severe enough by March, 1970, that he reported them to his supervisor, who in turn reported them to the company's medical director. In April, 1973, a physician determined that Olsen was suffering from TDI asthma. Olsen was hospitalized for this condition from early June to late September, 1973. In February, 1974, Olsen went on sick leave. At that time he signed an agreement for workmen's compensation benefits. The agreement described Olsen's condition as bronchial asthma due to exposure to TDI.

Olsen consulted three other physicians in 1974. One of the physicians, in a report that Olsen read in February, 1974, opined that Olsen had bronchial asthma, that TDI probably had played a significant role in causing his symptoms, and that Olsen was "on the verge of a severe disability." The report noted that Olsen's disease showed "at least one puzzling feature" in that it became much worse after Olsen was removed from exposure to TDI.

The pleadings, answers to interrogatories, admissions and affidavits do not establish when the plaintiffs learned that Olsen's condition was permanent, as the complaint asserts it is. The plaintiffs claim to have first learned of the permanency of the condition on July 11, 1977, less than three years before June 30, 1980, when the action was commenced. General Laws c. 260, § 2A, provides that actions of tort shall

be commenced only within three years next "after the cause of action accrues." This is an action of tort. The narrow question before us is whether the plaintiffs' causes of action arose before June 30, 1977. If they did, the action was brought too late. The plaintiffs would have us hold that their causes of action accrued only when they discovered that Olsen's asthma was permanent. We decline to adopt such a rule, and hold that their action is time-barred.

Since G. L. c. 260, § 2A, as amended through St. 1973, c. 777, § 1, does not direct when the period of limitations begins to run, that determination is for the court to make. *White* v. *Peabody Constr. Co.*, 386 Mass. 121, 128 (1982). *Franklin* v. *Albert*, 381 Mass. 611, 617 (1980). A cause of action to recover for an insidious disease could be deemed to accrue on one of several dates: the date of the defendant's negligent act; the date of the plaintiff's first exposure to the product; the date of the plaintiff's last exposure to the product; the date of the first physiological effect on the plaintiff, whether recognized by the plaintiff or not; the date of discovery of injury; and the date on which the plaintiff discovered, or reasonably should have discovered, that he has been harmed as a result of a defendant's conduct. The plaintiffs advocate another possibility in cases alleging permanent injury: the date that the plaintiff knows, or should know, that the injury is permanent.

We have not previously decided when a cause of action for negligence resulting in an insidious occupational disease accrues under G. L. c. 260, § 2A. In *Hendrickson* v. *Sears*, 365 Mass. 83 (1974), we held that a client's cause of action against an attorney for negligent certification of title did not accrue for the purpose of G. L. c. 260, §§ 2 and 2A, until the attorney's error was discovered or reasonably should have been discovered. *Id.* at 91. In *Friedman* v. *Jablonski*, 371 Mass. 482 (1976), we applied a similar discovery rule to a cause of action for deceit in the sale of real estate. *Id.* at 485-486. In *Franklin* v. *Albert, supra*, we held that a cause of action for medical malpractice does not accrue under G. L. c. 260, § 4, until a patient learns, or reasonably should

have learned, that he or she has been harmed as a result of the defendant's conduct. *Supra* at 612. In these cases the court has been guided by the principle that a plaintiff should be put on notice before his or her claim is barred by the passage of time. Thus, the discovery rule has been applied to causes of action based on "inherently unknowable" wrongs. *Friedman* v. *Jablonski, supra* at 485. There is no sound reason why the same accrual rule should not apply to actions to recover damages for an insidious disease caused by negligence. We conclude, therefore, that Olsen's cause of action did not accrue before he knew or should reasonably have known that he had contracted asthma as a result of conduct of the defendants.

It remains to be determined whether Olsen's cause of action accrued only at the later date when he knew that the asthma was permanent. Statutes of limitations are "vital to the welfare of society. . . . They promote repose by giving security and stability to human affairs." *Franklin* v. *Albert, supra* at 618, quoting *Wood* v. *Carpenter,* 101 U.S. 135, 139 (1879). They also "encourage plaintiffs to bring actions within prescribed deadlines when evidence is fresh and available." *Franklin* v. *Albert, supra,* citing *United States* v. *Kubrick,* 444 U.S. 111 (1979). Adoption of Olsen's argument that a claim for permanent injury accrues only when the permanency is, or should have been discovered, would create an unacceptable imbalance between affording plaintiffs a remedy and providing defendants the repose that is essential to stability in human affairs. If knowledge of the extent of injury were to control the accrual of a cause of action, the fixed time period of statutes of limitations effectively would be destroyed. The full extent of an injury often is not discoverable for many years after it has been incurred. Under the rule proposed by Olsen, there seldom would be a prescribed and predictable period of time after which a claim would be barred.

For these reasons, we reject Olsen's argument that his claim accrued when he knew of the permanency of his condition. See *Mansfield* v. *GAF Corp.,* 5 Mass. App. Ct. 551,

555 (1977). As a consequence, his claim is barred by G. L. c. 260, § 2A, because, as he impliedly concedes, unless that realization commenced the running of the limitations period, the period necessarily began more than three years before June 30, 1980. We need not consider whether his cause of action would have accrued on the discovery of inappreciable harm, see *Hendrickson* v. *Sears, supra* at 91, because here the discoverable harm was appreciable long before June 30, 1977. Also, since Olsen's claim relates to a single disease, bronchial asthma, it is distinguishable from cases in which the plaintiffs suffer successive, but distinct, injuries, which may give rise to separate causes of action. See *Fearson* v. *Johns-Manville Sales Corp.*, 525 F. Supp. 671 (D.D.C. 1981) (asbestosis followed by cancer).

Olsen's argument that he would have felt "awkward" suing parties that had a continuing business relationship with his employer, while he still hoped for continued employment, is without merit. If we were to take cognizance of that kind of fact in determining the date of accrual of a cause of action there would be little left to statutes of limitations. Also without merit is Olsen's contention that the defendants are estopped from relying on G. L. c. 260, § 2A, because a representative of Bell Labs told him that TDI asthma is not permanent, and a representative of Baker Castor Oil Co., predecessor to N. L. Industries, Inc., told him that TDI does not cause asthma. Unless the defendants "made representations they knew or should have known would induce the plaintiff to put off bringing suit and . . . the plaintiff did in fact delay in reliance on the representations," there is no estoppel. *White* v. *Peabody Constr. Co.*, 386 Mass. 121, 134-135 (1982).

When a spouse suffers personal injury as a result of the negligence of a third party, the other spouse may recover damages from the third party for loss of consortium. *Diaz* v. *Eli Lilly & Co.*, 364 Mass. 153, 167-168 (1973). The claim for loss of consortium is independent of the claim of the injured spouse. *Feltch* v. *General Rental Co.*, 383 Mass. 603, 606 (1981). Although a cause of action for loss of

consortium in most cases would accrue at the same time as would the action for personal injuries, this may not always be true. Cf. *Diaz* v. *Eli Lilly & Co., supra* at 167. Since the causes of action are independent, the date of accrual of each action must be determined separately.

The parties agree that Virginia N. Olsen's claim is governed by the limitations period prescribed by G. L. c. 260, § 2A. Thus, if her cause of action accrued before June 30, 1977, it is barred. In determining when her cause of action accrued, we apply the same rule as we applied to her husband's claim. The relevant documents establish that Olsen was hospitalized continuously for three months in 1973, and on numerous occasions thereafter. By 1975 Olsen's asthma caused him to have paroxysms that were relieved only by positive pressure breathing and that required him to have a machine available at all times. Consortium includes the companionship, affection, and sexual enjoyment of one's spouse. *Agis* v. *Howard Johnson Co.*, 371 Mass. 140, 146 (1976). It is beyond controversy that Virginia suffered an appreciable loss of consortium prior to June 30, 1977. Her cause of action was barred, therefore, before this action was brought on June 30, 1980.

*Judgments affirmed.*