Doerfer, J.
Plaintiff Jean Palermo (Palermo) has brought this action for negligence (Count I), breach of contract (Count II), reckless infliction of emotional distress (Count III), and violation of G.L.c. 93A, §9 (Count IV), to recover for damages allegedly caused by defendant John H. Brennan (Brennan), who was her psychiatrist and with whom she had a sexual relationship. Brennan has now moved for summary judgment, pursuant to Mass.R.Civ.P. 56, on all counts of the complaint on the ground that the claims are barred by the relevant statutes of limitation. In the alternative, he has also moved for summary judgment on Count IV of the Complaint on the ground that the plaintiff has failed to show any loss of money or property as required by G.L.c. 93A, §9, prior to its amendment in 1979. For the following reasons, the defendant’s motion for summary judgment is allowed as to all counts of the complaint.
BACKGROUND
For the purposes of this motion, the following facts are undisputed:
In March 1971, Palermo began seeing Brennan for psychiatric treatment because she was depressed, was having marital difficulties, and felt “unable to eat or get out of . . . bed or otherwise function.” Plaintiffs Supplemental Answers to Defendant’s First Set of Interrogatories, No. 3, at 4. She continued to see Brennan approximately once a week for the next several years. In late June or early July 1973, during a therapy session, Palermo began to cry and Brennan came over to her and held and rubbed her hands in her lap. The following week, at Palermo’s next scheduled therapy session, Brennan told Palermo he could no longer treat her because he felt differently toward her than he did toward his other patients, and treatment was discontinued.
In March 1974 Palermo called Brennan and asked to schedule another appointment. Brennan refused, stating that he still felt the same way toward Palermo. Around Christmastime 1974, Palermo called Brennan again, and Brennan agreed to schedule a therapy *496 session for the first week of January 1975, stating that he was no longer having the problems with treating her that he was having before.
At the scheduled therapy session in the first week of January 1975, Palermo became very nervous and slid from the edge of her chair onto the floor. After giving Palermo medication to calm her down, Brennan then knelt before Palermo and began to fondle her breasts. Although they discussed sexual intercourse during that visit, Brennan and Palermo decided not to engage in intercourse at that time. At the end of the visit, Brennan scheduled another appointment for an evening approximately one and a half weeks later. At this next appointment, Brennan’s secretary was not present when Palermo arrived, Brennan returned to Palermo the $50.00 she had paid the previous week, and told Palermo he could not take her money. At some point during the therapy session, Brennan left his desk, approached Palermo and began kissing her, and they engaged in sexual intercourse on the floor of the office.
Palermo continued to see Brennan for therapy sessions at his office approximately every two weeks until June 1975. At these meetings, generally Brennan and Palermo began by conducting a therapy session, then engaged in sexual intercourse and had one or more drinks, and then continued the therapy. In June 1975, Brennan and Palermo began conducting these sessions at a Ramada Inn hotel. Palermo attempted to break off the relationship in September 1975, at which time Brennan became angry, “drove away with [Palermo] in his car,” and “began touching and kissing [her] in an assaultive fashion.” Brennan then “took [Palermo] to a motel in Framingham and sex with [her].” Plaintiffs Supplemental Answers to Defendant’s First Set of Interrogatories, No. 3, at 6. Palermo did not see Brennan after this until February 1976, and Brennan did not refer her to another psychiatrist.
In February 1976, Palermo called Brennan “in a crisis.” Brennan and Palermo met later at the Ramada Inn to conduct a therapy session regarding the crisis, and also had sexual intercourse. Thereafter, their meetings began again, and continued this time until March 1977. The meetings again resumed in September 1978, when Brennan told Palermo he was separated from his wife, and continued until February 1979, at which time Brennan told Palermo he was going back to his wife but wanted to continue treating Palermo. Palermo declined to continue treatment.
Palermo now seeks to recover for harm caused by Brennan’s treatment of her. The ground for Brennan’s motion for summary judgment is that her claims are barred by the relevant statutes of limitation. The materials submitted to the court on this motion reveal the following with respect to the harm suffered by Palermo. Palermo states:
For nine years, since 1975 when the sex started, I lived a total nightmare of embarrassment of my hands shaking in public whenever I would sign my name. When it would happen to me I would live in a suicidal depression for three days.
. . . My job was tormenting to me just to hold on to my job [sic].
Deposition of Jean Palermo, August 18, 1993 (Deposition), at 11. Palermo states that there was “one meeting [with Brennan] that I found extremely traumatizing to me,” Deposition at 42, a time during which Brennan ejaculated while wearing his suit, an incident which Palermo found “very disturbing.” Deposition at 43. Palermo states that she “always felt that [the therapy provided by Brennan] was awful.” Deposition, vol. 3, at 15. Palermo also states that she realized in 1979 her “relationship with [Brennan] that had ended, [the] affair with [Brennan] that had ended,” was part of the cause of her anxiety at that time. Deposition, vol. 3, at 24. When asked when she first realized that her ability to have intimate relationships with people was affected, Palermo states:
I would say that after I had the relationship with Doctor Brennan and during the time I was having it, I felt that I was living a secret life, that I had a very big secret that I could not share with people . .. and I think I started to definitely feel a distance from people . . .
In an affidavit submitted with her opposition to summary judgment, Palermo states, “I did not realize that Dr. Brennan’s treatment had been bad or had caused me harm until approximately March and April of 1989 when I read articles which appeared in the local newspapers regarding therapist-patient sexual misconduct.” Affidavit of Jean Palermo, para. 18, at 6. Her current therapist, Susan Shapiro (Shapiro), states:
In my professional opinion, Ms. Palermo did not recognize that she had been sexually abused by the defendant, and indeed, given her psychological condition, she could not have been expected to discover, that his treatment was deficient or that it had caused her harm until approximately March or April, 1989 when she began to read articles appearing in local newspapers regarding therapist-patient sexual misconduct.
Affidavit of Susan Shapiro (Shapiro Affidavit), para. 7, at 5.
DISCUSSION
A cause of action usually accrues at the time of plaintiffs injury: however, if the action is based on an inherently unknowable wrong, “it accrues when the injured party knew, or in the exercise of reasonable diligence, should have known of the factual basis for a cause of action.” Gore v. Daniel O’Connell’s Sons, Inc., 17 Mass.App.Ct. 645, 647 (1984). The plaintiff need not apprehend the full extent or nature of her injury in order for a cause of action to accrue. Riley v. Presnell, 409 Mass. 239, 243 (1991), citing Olsen v. *497 Bell Telephone Laboratories, Inc., 388 Mass. 171, 175 (1983). Accrual is delayed only where it is the facts that are unknown, not the legal theory for the cause of action. Zampell v. Consolidated Freightways Corp., 15 Mass.App.Ct. 954 (1983), and cases cited.
Palermo’s deposition testimony and answers to interrogatories “make[ ] it altogether plain,” O’Brien v. Analog Devices, Inc., 34 Mass.App.Ct. 905, 906 (1993), that she understood as early as 1975 that Brennan’s treatment of her was a cause of anxiety to her. Compare Riley v. Presnell, 409 Mass. 239 (1991) (no evidence that patient realized there was a causal link between his condition and his treatment he received from defendant). Palermo “cannot create a disputed issue of fact by the expedient of contradicting by affidavit statements previously made under oath at a deposition.” O’Brien, supra, at 906, citing Perma Research and Dev. Corp. v. Singer Co., 410 F.2d 572, 578 (2d Cir. 1969); Radobenko v. Automated Equip. Corp., 520 F.2d 540, 544 (9th Cir. 1975).
Furthermore, the affidavits submitted by Palermo and Shapiro do not actually create a disputed issue of fact. The conclusory statements in the affidavits are mere legal conclusions, and as such do not control the court’s own determination as to whether Palermo's cause of action has accrued, a determination which “has long been the product of judicial interpretation in this Commonwealth.” Riley v. Presnell, 409 Mass. 239, 243 (1991), quoting Franklin v. Albert, 381 Mass. 611, 617 (1980).
Shapiro’s affidavit erroneously pinpoints the moment of accrual at the time that Palermo first realized that she had been “sexually abused.” Shapiro Affidavit, para. 7, at 5. The moment that Palermo attached the term sexual abuse to Brennan’s conduct more accurately describes the moment at which Palermo realized that she had legal recourse against Brennan, see Zampell v. Consolidated Freightways Corp., 15 Mass.App.Ct. 954 (1983), and cases cited, rather than when she realized she had suffered harm as a result of his actions. Likewise, while her discovery of newspaper articles regarding “therapist-patient sexual misconduct” may have put a label on Brennan’s conduct or corroborated Palermo’s feelings, nonetheless Palermo was previously aware of these feelings, and of their connection to Brennan’s conduct. See Olsen v. Bell Telephone Laboratories,Inc., 388 Mass. 171, 175 (1983) (plaintiff need not be aware of full extent of harm to begin running of limitation period). The anxiety that Brennan may have caused Palermo, of which Palermo concedes she was aware at least as early as 1979, is the same type of psychological and emotional distress for which she now seeks to recover, and her action is therefore barred.
ORDER
For the foregoing reasons, the defendant’s motion for summary judgment is hereby ALLOWED.