Brassard, J.
Plaintiffs William and Linda Skelley (“the Skelleys”) bring, on their own behalf and as parents of Christopher Skelley (“Christopher”), this action against the Fessenden School (“Fessenden”), Randall Plummer (“Plummer”), headmaster of the school, and Jonathan Small (“Small”) for damages incurred when Christopher was allegedly stalked and harassed by Small at the Fessenden School. The defendants now move for summary judgment pursuant to Mass.R.Civ.P. 56(c) on all counts against them, claiming that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. Small also moves for summary judgment on his counterclaim for invasion of privacy, as a result of the Skelleys’ conduct in sending a letter to the Fessenden Community which disclosed a confidential Massachusetts Department of Social Services (“DSS”) report as well as the contents of Small’s personnel file. For the following reasons, defendants’ motions are ALLOWED in part and DENIED in part.
BACKGROUND
The Fessenden School is a private school located in Newton, Massachusetts. At all relevant times, Plummer was headmaster of the school. Defendant Small was a teacher and coach at Fessenden from 1987 until 1992.
Christopher was a student at Fessenden from September 1989 until May 1991. Christopher did not have any serious problems at Fessenden until the 1990-91 school year, when Christopher was fourteen years old. During the 1990-91 season, Christopher was a member of the varsity hockey team at the school; Small was the coach of the team. While he was a member of the *415 hockey team, Christopher came to believe that Small was paying him inappropriate amounts of attention and that Small was stalking him. Christopher complained that Small sought him out alone for consultations about hockey practices, that Small changed clothes in front of the team in the locker room, that Small was waiting for him outside of classrooms, that Small stared at Christopher’s genitalia, that Small required hockey team members to attend team meetings in Small’s apartment, and that Small demanded that the hockey team members attend a special “practice” which involved team members swimming in the school’s swimming pool.
Christopher never raised his concerns about these actions with Small, but he told his parents about his fears during the course of the winter hockey season. William and Linda Skelley spoke with Small, and they also spoke with Plummer about their concerns about Small’s allegedly inappropriate behavior. Plummer told the Skelleys that there was nothing in Small’s record which suggested that Christopher was in any danger.
Small’s personnel file did contain evidence of certain concerns which had been raised with Fessenden officials. In 1988, Plummer became aware that students had discovered a small amount of marijuana in Small’s room at the school. Plummer advised Small to apologize to the students in the dormitory and to tell them that his possession of marijuana was inappropriate. In late spring of 1988, a Fessenden employee found a letter in Small’s apartment from an college roommate of Small’s. The letter expressed concern about Small potentially having difficulty working with boys in a junior boarding school. When this letter was brought to Plummer’s attention, Plummer interviewed Small and questioned him about the concerns raised by the letter. In response to the concerns raised by the letter and Plummer’s talk with Small, Plummer removed Small from living in the dormitories as a dorm parent. In his conversation with the Skelleys, Plummer did not advise them of these matters.
After their conversation with Plummer, the Skelleys told Christopher that Plummer had assured them that there was nothing to worry about as far as Small was concerned. When his parents told him that his worries had no basis, Christopher ran from the room. The Skelleys refer to this conversation as the point at which their relationship with Christopher began to severely deteriorate.
During the winter, Christopher also expressed his concerns about Small’s behavior to another Fessenden teacher, Mark Burke (“Burke”). At some point in March or April, Burke obtained Small’s personnel file from one of the school’s administrative assistants, without the school’s consent, and shortly thereafter Burke turned the file over to the Skelleys. After reading the file, William Skelley was “flabbergasted” and “couldn’t even talk.”
Burke also filed a 51A[2] with the DSS. DSS issued a report that supported a finding of neglect on the part of Small. On appeal, the DSS decision was ultimately found to be in error and reversed by the commissioner.
Plummer asked Small not to have any further contact with Christopher at this time, and Christopher and Small did not speak again over the remainder of the school year. The two did see each other again at an assembly attended by the whole school on the final day of the school year on May 2, 1991. Christopher felt that Small was staring at him on that occasion, and called his parents asking to be picked up. When his parents arrived at the school to pick up Christopher, he was ciying and appeared extremely upset. After the end of the school year, Christopher showed more severe signs of psychological damage; he attempted to commit suicide, and required hospitalization for a time.
The Skelleys believed that Plummer and the trustees did not handle the allegations against Small appropriately. In September 1991, the Skelleys sent a letter to all parents of children enrolled at Fessenden, and to the trustees and faculty of the school. The letter described what the Skelleys believed had happened to their son and the ensuing DSS investigation. The letter did not name Small specifically. There was, however, mention that the teacher was Christopher’s teacher in the winter and was also his hockey coach. The letter also questioned the teacher’s sexuality and made reference that the teacher was possibly “sexually confused.” The Skelleys received some of the information contained in the letter from Burke, who had in turn received the file from Plummer’s administrative assistant, without permission from Plummer or the school. The Skelleys did not receive permission from Small, Fessenden, or DSS to reveal the information in their letter to parents. As a result of the allegations in the Skelleys’ letter, Small felt he had to resign as a teacher at Fessenden.
The Skelleys further allege that during the course of 1991, as the Fessenden community was addressing the issues surrounding the accusations against Small and the school, Plummer and other Fessenden officials made statements, both orally and in letters, which defamed Christopher and the Skelleys.
DISCUSSION
This court grants summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and “[further] that he is entitled to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989).
*416 I. Release:
Defendants argue that plaintiffs’ entire complaint is barred by a release signed by the Skelleys when Christopher started school for the year. The Skelleys signed a re-enrollment contract with Fessenden containing a release provision which stated, in part:
We give permission for our son to participate in all school activities, whether athletic or extracurricular and including trips away from the School’s premises: and we release the School from liability to us or our son for any loss or damage sustained by us or him or any injury to him or his property, whether occurring at the school or elsewhere.
Defendants argue that the clause is clear and absolute on its face, and that by signing the re-enrollment agreement plaintiffs have agreed to release defendants from liability for the harm which allegedly occurred to Christopher and his parents. A party may contract to exempt itself from liability which it might incur as a result of its own negligence. Cormier v. Central Mass. Chapter of the Nat’l Safety Council, 416 Mass. 286, 288 (1993). “[A]ny doubts about the interpretation of the release must be resolved in the plaintiffs favor.” Cormier, 416 Mass. at 288, citing Lechmere Tire & Sales Co. v. Burwick, 360 Mass. 718, 721 (1972). The release language at issue here does not appear to be as broad and inclusive as defendants urge. The release speaks only in terms of extracurricular and athletic activities including those which take place off school grounds. The case on which defendants rely, Cormier v. Central Mass. Chapter of the Nat'l Safety Council, is distinguishable. In Cormier, the language of the release explicitly set out the activity in which the plaintiff would be engaging and for which the plaintiff was releasing the defendants from liability (i.e., learning to ride a motorcycle). Here, it is less clear which activities are included in the release clause, and it is certainly improbable that a parent would contract away the right to sue in the event that a child was sexually harassed or abused by a member of the faculty. Moreover, public policy would seem to prohibit a parent from contracting away a child’s right to sue in cases of alleged abuse or harassment.
II. Statute of limitations:
The Skelleys have brought claims of negligent misrepresentation against defendants Plummer and Fessenden (Counts III and IV). The Skelleys have also brought claims on their own behalf and on behalf of Christopher alleging negligent infliction of emotional distress by Small, Plummer, and Fessenden (Counts XII, XIII and XIV). Defendants have moved for summary judgment on these counts, claiming that these counts are barred by the statute of limitations, because the claims were filed more than three years after the cause of action accrued. A claim for damages in tort must be brought within three years after the cause of action accrues. G.L.c.260, §2A. In Massachusetts, a cause of action in tort arises when a defendant becomes aware that he has been injured by the defendant’s conduct. See Hendrickson v. Sears, 365 Mass. 83, 88-90 (1974). While the plaintiff must have some idea that he has been injured, he need not know the full extent of the injury in order for the cause of action to accrue. Olsen v. Bell Telephone Laboratories, Inc., 388 Mass. 171, 174-76 (1983). The complaint in this case was filed on May 2, 1994. Defendants claim that plaintiffs had reason to know that they had been injured by the defendants’ conduct on or before May 1, 1991.
The facts in the summary judgment record show • that the Skelleys knew or should have known of Plummer’s alleged misrepresentation on or before May 1, 1991. Although the record contains differing dates on which Burke may have presented the information in Small’s personnel file to the Skelleys, it is undisputed that Burke disclosed this information to the Skelleys at some point in March or April 1991. It is this information in Small’s personnel file which gives rise to the plaintiffs’ claim that Plummer knew that Small was a danger to Christopher. Plaintiffs therefore knew thát Plummer had made the alleged misrepresentation about Small’s record as of March or April 1991.
The Skelleys argue that the negligent misrepresentation claim should not be time barred because they did not reasonably know of the harm which had occurred to them and to Christopher as a result of these misrepresentations. The Skelleys have testified at deposition, however, that their relationship with Christopher had begun to deteriorate as of the night they told Christopher that they believed Plummer’s statement that there was no reason to worry about Small. When the Skelleys learned of Plummer’s alleged misrepresentations, they should have been aware that these misrepresentations had contributed to the damage to their relationship with their son. While it is true that the record shows that the Skelleys were not aware of the full extent of the harm they had suffered, an understanding of the extent of the harm suffered is not necessary for a cause of action to accrue. See Olsen, 388 Mass. at 174-76. The negligent misrepresentation counts of the complaint are, therefore, barred by the statute of limitations. Any claim Christopher may have on his own behalf for negligent misrepresentation is not, however, time-barred, because the statute of limitations was tolled by Christopher’s minority. G.L.c.260, §7.
The claims for negligent infliction of emotional distress, on the other hand, are predicated, at least in part, on different facts. The summary judgment record can fairly be read to suggest that the plaintiffs did not suffer or become aware of the emotional distress until the last day of the school year. Although the record is not clear as to the exact date of the last day of the school year, the record can fairly be read to suggest that this date was some time after May 2, 1991. Since *417 this date falls within the statutorily prescribed three year time limit for bringing such a claim, the negligent infliction of emotional distress claims are not barred by the statute of limitations.
III.Negligent Infliction of Emotional Distress (Counts XII, XIII and XIV):
Plaintiffs have claimed that Plummer, Fessenden, and Small are liable for negligent infliction of emotional distress. In order to prove negligent infliction of emotional distress, plaintiffs must show that the defendants’ negligent conduct caused physical manifestations of emotional distress, and that a reasonable person would have suffered emotional distress under these circumstances. Sullivan v. Boston Gas Co., 414 Mass. 129, 133 (1993). Christopher has presented evidence that his suicide attempts were caused by his perception of Small’s alleged stalking. The question of whether it was reasonable for Christopher to suffer such emotional distress in these circumstances is one for a jury. Christopher’s claim on this count therefore survives defendants’ motions for summary judgment.
In order for William and Linda Skelley to recover for negligent infliction of emotional distress on their own behalf, they must show, in addition to the other elements of the claim, that they had “(a) substantially contemporaneous knowledge of the outrageous conduct and (b) a severe emotional response.” Anthony H. v. John G., 415 Mass. 196, 199 (1993). Moreover, for a parent to recover for emotional distress caused by witnessing a child’s injuries, the child’s injuries must be serious, and the parent’s emotional distress must follow “closely on the heels of the negligent act.” See Miles v. Edward O. Tabor, M.D., Inc., 387 Mass. 783, 789 (1982); Ferriter v. Daniel O’Connell’s Sons, Inc., 381 Mass. 507, 518 (1980).
Courts interpret the requirement that the trauma follow “closely on the heels of the accident” to mean that the distress must follow almost immediately after the negligent act. See Nancy P. v. D’Amato, 401 Mass. 516, 522 (1988) (holding that a mother who learned that her daughter had been sexually assaulted several months earlier did not satisfy the immediacy requirement); Miles, 387 Mass. at 789 (holding that where a doctor’s negligence caused a baby to die two months after the negligent act occurred, the mother could not recover because her emotional distress did not follow closely on the heels on the negligent acts); Ferriter, 381 Mass. at 518 (holding that where a man was seriously injured while working, and his wife and children rushed to the hospital and found him there with permanent and serious injuries, the wife and children’s shock followed closely on the heels of the negligent act).
William and Linda Skelley have neither alleged nor shown that there was a severe emotional response on their part when they saw Christopher in tears after picking him up after the assembly on the last day of school. The parents’ claim hinges, therefore, on the argument that they suffered emotional distress after observing Christopher’s suicide attempts. The first of these suicide attempts occurred in the summer of 1991, at least several weeks after the last contact Christopher had with Fessenden. Since there was a lapse of several weeks between the last allegedly negligent act of the defendants which caused harm to Christopher and the time when the parents suffered emotional distress, defendants are entitled to summary judgment on William and Linda Skelley’s claim for negligent infliction of emotional distress. The parents’ emotional distress was too far removed in time from the allegedly negligent acts. See Miles, 387 Mass. at 789.
IV.Defamation (Counts VIII and IX):
Defendants request an order of summary judgment on plaintiffs’ claim for defamation, stating that there is no evidence that the defendants defamed the plaintiffs. “Defamation may be either libel or slander depending upon the mode of communicating the defamation." Nolan and Sartorio, 37 Mass. Practice 157, §118 (2d ed. 1989). Here, plaintiffs base their claim in part on letters sent by Plummer and a member of Fessenden’s Board of Trustees, and in part on statements made by Plummer to various members of the Fessenden community. To the extent the claim is based upon the letters, it sounds in libel; to the extent the claim is based upon the statements allegedly made to the various groups at Fessenden, it sounds in slander. See Sharratt v. Housing Innovations, Inc., 365 Mass. 141, 146, 147 n.1 (1974).
In order to establish a claim for defamation, the plaintiffs must show that a statement was made which tended to discredit the plaintiff “in the minds of any considerable and respectable segment in the community.” Draghetti v. Chmielewski, 416 Mass. 808, 811 (1994), quoting Tropeano v. Atlantic Monthly Co., 379 Mass. 745, 751 (1980). The letters plaintiffs present as evidence contain statements which suggest that the Skelleys’ charges were unfounded and that the Skelleys may have been distant parents. Moreover, there is evidence in the summary judgment record to show that Plummer orally told members of the Fessenden community that Christopher was an unstable boy, and that the family was “dysfunctional” and “psychiatrically unsound.” In light of the evidence presented, the determination of whether these statements tended to lower the Skelleys in the estimation of the public or hold the Skelleys up to ridicule and contempt is a question for the jury.
V.Negligence (Counts I and II):
Plaintiffs’ claim for negligence encompasses claims for negligent hiring, retention, and supervision against Fessenden and Plummer. Plaintiffs allege that defendants’ were negligent in hiring Small after being advised that he might have difficulties working with boys of a junior high school age, and that they were negligent in retaining Small after the renewed sugges *418 tion of Small’s potential problems with boys came to light. There is a factual dispute as to what information Plummer had at the time he hired Small. Moreover, the reasonableness of defendants’ actions in light of the information they received is a question for a jury to decide.
VI. Breach of Contract (Count V):
Plaintiffs claim that defendants’ conduct constitutes a breach of the re-enrollment contract which the parties signed at the start of the 1990-91 school year. Plaintiffs claim that defendants were obligated to provide Christopher with an education and with a safe, wholesome environment. Defendants claim that plaintiffs’ breach of contract claim should be dismissed, because the contract does not contain a provision explicitly stating that defendants have such a duty.
A look at the language of the agreement, however, indicates that the defendants’ position is untenable. While the contract is explicit as to certain provisions regarding payment and discipline, the contract is silent on numerous other issues which the court must presume were of some significance to the parties. The contract does not state that the school shall provide teachers, classrooms, books, or a curriculum. The contract’s silence on these matters does not lead to a reasonable inference that these issues were not contemplated by the parties. The implied covenant of good faith and fair dealing implicit in every contract requires, therefore, that each of the parties conducts himself in a way which will uphold “the right of the other party to receive the fruits of the contract.” Anthony’s Pier Four, Inc. v. HBL Associates, 411 Mass. 451, 471-72 (1991). There remains a factual dispute as to whether defendants’ conduct constituted a breach of the contract, and the motion for summary judgment on this count must therefore be denied.
VII. Small’s Counterclaim for Invasion of Privacy:
Small makes a claim for damages for invasion of privacy under G.L.c. 214, Sec. 1B which states:
A person shall have a right against unreasonable, substantial or serious interference with his privacy. The superior court shall have jurisdiction in equity to enforce such right and in connection therewith to award damages.
G.L.c. 214, Sec. 1B. This court must first determine whether the Skelleys’ intrusion into Small’s privacy was serious and substantial. Schlesinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 409 Mass. 514, 519 (1991). If the intrusion was serious and substantial, then the court must determine whether such intrusion was unreasonable under the circumstances. Id. at 518.
Small argues that the Skelleys disclosed information from a confidential DSS report, in violation of G.L.c. 119, §51E,[3] and from his personnel file, to people who were not authorized to receive such information. The Skelleys assert that Small was never identified by name in the Skelleys’ letter. Further, the Skelleys assert that any invasion of privacy was not unreasonable under the circumstances because Fessenden is a close-knit community and the opportunity for faculty impropriety is extensive.
The Skelleys’ interference with Small’s right to privacy rises to the level of a serious and substantial invasion. It would not have been difficult for the people who received the Skelleys’ letter to identify the teacher in question. Fessenden is a small and close community.
Although the Skelleys did not violate c. 119, §51E by doing so, the release by the Skelleys of information from the DSS report was a serious interference with Small’s right to privacy. Moreover, because there is a high expectation of privacy in a personnel file, the release of information from a personnel file is also a substantial interference with the right to privacy.
The next question is whether these violations were unreasonable under the circumstances. “The statute obviously was not intended to prohibit serious or substantial interferences which are reasonable or justified,” Schlesinger, 409 Mass. at 518, even though the words “unreasonable, substantial or serious” are phrased disjunctively. O’Connor v. Police Comr. of Boston, 404 Mass. 324 (1990). A legitimate countervailing interest may make the disclosure reasonable under the circumstances. Bratt v. International Business Machines, Corp., 392 Mass. 508, 519-21 (1984).
The Skelleys urge that their acts were reasonable because Fessenden was not cooperative and was trying to cover up the allegations against Small. The Skelleys also contend that the safety of the children at Fessenden greatly outweighed Small’s right to privacy. This court finds that there are material facts in dispute on the issue of reasonableness. These facts must be determined at trial.
ORDER
For the foregoing reasons, defendants’ motions for summary judgment are ALLOWED in part and DENIED in part.[4] Specifically, the motions are ALLOWED as to Counts III and IV (negligent misrepresentation). Defendants’ motions are further ALLOWED as to Counts XII, XIII, and XIV (negligent infliction of emotional distress) insofar as these counts allege a claim for recovery on the part of William and Linda Skelley on their own behalf.
Defendants’ motions are DENIED as to Counts I and II (negligence), Count v. (breach of contract), and Counts VIII and IX (defamation). Defendants’ motions are further DENIED as to Counts XII, XIII, and XIV (negligent infliction of emotional distress) insofar as *419 these counts state a claim for recovery on the part of Christopher Skelley.
Furthermore, Small’s motion for summary judgment on his counterclaim for invasion of privacy is DENIED.

 G.L.c. 119, §51 requires school teachers and a number of other professionals to report to DSS any abuse of a child under the age of eighteen.

 G.L.c. 119, Sec. 51E states in pertinent part: “No such report shall be made available to any persons other than those enumerated in this section without the written and informed consent of the child’s parents or guardian, the written approval of the commissioner, or an order of a court of competent jurisdiction.” G.L.c. 119, Sec. 51E. This statute plainly gives the Skelleys the right to release the information in the report to whomever they wished.

 This opinion does not make any reference to either plaintiffs’ loss of consortium claims or plaintiffs’ claims under the Massachusetts Equal Rights Act. The parties represented to the court at oral argument on the motions that the claims under the Massachusetts Equal Rights Act issues were to be dismissed by stipulation of the parties, and that the parties would further submit a stipulation clarifying the relief sought under the claims for loss of consortium. As the court has not received any such stipulation from the parties, the court declines to address those matters.