Kottmyer, J.
Plaintiffs, Sedisia M. Hopkins (“Hopkins”) and Rhoda Lawton (“Lawton”), bring this action seeking damages for personal injuries. Hopkins and Lawton, who worked in the Suffolk County Courthouse (“Courthouse”), allege that they suffered illnesses due to chemical exposure caused by the defendants’ faulty performance of a contract to restore and weatherproof the facade of the Courthouse. The moving defendants, Dean Tucker Shaw, Inc. (“DTS”) and Thompson and Lichtner, Inc. (“T&L”), argue that the claims of Hopkins and Lawton filed on February 12, 1999, are barred by the applicable státutes of limitations and move for summary judgment pursuant to Mass.R.Civ.P. 56. For the following reasons, the defendants’ motions for summary judgment are Allowed as to claims asserted by Sedisia Hopkins and Denied as to claims asserted by Rhoda Lawton.
SUMMARY JUDGMENT RECORD
The summary judgment record, viewed in the light most favorable to Hopkins and Lawton, establishes the following. In 1993, DTS, T&L and others contracted with the Commonwealth to restore and weatherproof the facade of the Courthouse. In completing the project, DTS and T&L used Duramem V-500 and other weatherproofing products. These products contained chemical and organic compounds which, when exposed to air, produced harmful vapors and emissions.
In April of 1995, Hopkins and Lawton began working in the Probation Department of the Boston Municipal Court (“BMC”). Hopkins and Lawton worked primarily on the fourth and fifth floors of the Courthouse. At the time of her employment, neither Hopkins nor Lawton was told that she had been hired to replace a worker who was on sick leave.
A short time[3] after she started working in the Courthouse, Hopkins began to suffer a number of ailments, including nasal congestion, burning of the nose, headaches, post-nasal drip, neck pain and sinusitis. By November 1995, her condition had worsened to include dizziness, chest tightness, shortness of breath, wheezing, palpitations, rhinitis, sinusitis, headaches, ear infections and she was diagnosed as suffering from asthma by a physician assigned to the Occupational Health Department in the Courthouse. (Int. Resp. No. 14.) On December 6, 1995, Hopkins was admitted to Brigham and Women’s Hospital complaining of a stiff neck, shortness of breath, nausea and vomiting, and chills. A CT scan of Hopkins’s head revealed opacification of the ethmoid and right frontal sinuses and bilateral thickening of the sphenoid sinuses. Hopkins received treatment for severe sinusitis. Before April 1995, Hopkins had no medical history of asthma, sinusitis or rhinitis.
On January 31, 1996, Dr. John W. Burress, a state-retained occupational and environmental health specialist, examined Hopkins and on February 14, 1996. He issued a report concluding that her exposure to weatherproofing chemicals was the likely cause of her illness. This diagnosis represented the first time any medical professional causally related Hopkins’ symptoms to the conditions at the Courthouse. Based on Burgess’ recommendation, Hopkins was transferred to another building in February of 1996. A subsequent report by Dr. L. Christine Oliver corroborated Dr. Burress’s findings as to causation.
Lawton, unlike Hopkins, had suffered from asthma for most of her life. Her asthma would flare up every couple of months for a variety of reasons, including exposure to dogs, cats, pollen, grass, mildew, mold and dust. Lawton’s asthma flared up after she began working in the courthouse in April of 1995, but her *215 condition did not change significantly until October 1996.[4] In July 1995, Lawton consulted a physician. The records from this consultation reveal that Lawton’s asthma had worsened. The records do not suggest the Courthouse as the cause of Lawton’s symptoms.
On October 30, 1996, Lawton was examined by Dr. Burress. Dr. Burress examined Lawton again on November 6 and 20, 1996. Dr. Burress’ notes from the October 30, 1996[5] examination reveal that Lawton’s symptoms began approximately one to two hours after she arrived at work and included headaches and congestion. The notes also reveal that Lawton’s symptoms improved over the weekend and worsened during the week. The notes do not identify the time period over which Lawton experienced these symptoms. The notes do, however, reveal that Lawton “conveyed a significant temporal relationship between [the] increase in [her] symptoms and her work.” On November 25, 1996, Dr. Burress attributed Lawton’s aggravated condition to the chemicals in the Courthouse. This diagnosis was the first time that any medical professional causally related Lawton’s symptoms to the conditions at the Courthouse.
In 1995 Lawton knew that former employees of the Courthouse had filed a lawsuit complaining of injuries resulting from air quality problems in the Suffolk County Courthouse.[6]
In 1995, Lawton and Hopkins were told by their supervisors, BMC Chief Probation Officer, John S. Tobin ("Tobin”), and Payroll Clerk, Elaine P. Glynn (“Glynn”) that weatherproofing contractors and subcontractors had informed them that air quality tests confirmed that there was “absolutely nothing wrong with the air in the Courthouse.” Further, Tobin and Glynn stated that the workers who had been transferred or were on sick leave were “crazy” and that their symptoms “were all in their heads.”
On February 12, 1999, Hopkins and Lawton filed their complaint. In twelve Counts, the plaintiffs seek recovery for personal injuries resulting from the defendants’ negligence (Counts I-VII),[7] breach of warranty (Counts VIII and IX),[8] and negligent misrepresentation (Counts X-XII).[9] In their answers, DTS and T&L plead, inter alia, all applicable statutes of limitations. On February 5 and March 13, 2001, respectively, DTS and T&L filed motions for summary judgment.
DISCUSSION
This court grants summary judgment when there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Comm’r of Corr., 390 Mass. 419, 422 (1983). The moving party bears the burden of affirmatively demonstrating these elements. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). A party moving for summary judgment who would not bear the burden of proof at trial may demonstrate an absence of triable issues by either submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the nonmoving party would have no reasonable expectation of proving an essential element of its case at trial. Kourouvacilis v. Gen. Motors Corp., 410 Mass. 706, 716 (1991). To overcome a summary judgment motion, the nonmoving party .must articulate specific facts establishing the existence of a genuine issue of material fact. Pederson v. Time, Inc., 404 Mass. at 17. Bare assertions or conclusions regarding an individual’s understandings and assumptions are insufficient to withstand a well-pleaded motion for summary judgment. Polaroid Corp. v. Rollins Envtl. Servs., 416 Mass. 684, 696 (1993).
DTS and T&L argue that the claims of Hopkins and Lawton are barred by the Commonwealth’s three-year statutes of limitations for tort actions that either allege personal injury or arise from improvements to real property. See G.L.c. 260, §§2A and 2B. Hopkins and Lawton counter that ignorance as to the cause of their personal injuries tolled these statutes. Hopkins and Lawton bear the burden of proving this point. Riley v. Presnell, 409 Mass. 239, 243-44 (1991); Franklin v. Albert, 381 Mass. 611, 619 (1980) (”[T]he plaintiff bears the burden of proving facts taking his case outside the impact of the . . . statute of limitations”). As they filed their complaint on February 12, 1999, the issue before the court is whether either Hopkins or Lawton has raised a genuine issue of material fact as to whether her claims accrued after February 12, 1996.
Under Massachusetts law, “the general rule in personal injury actions is that the cause of action accrues when the plaintiff is injured.” Id. at 243. Recognizing the inequity of this rule in cases where a statute of limitations would bar a claim before its proponent either knew or reasonably should have known that he or she had been harmed by the conduct of another, the Commonwealth’s courts, in the absence of a governing statute, have developed a discovery rule for the purpose of determining when a cause of action accrues. Bowen v. Eli Lilly & Co., Inc., 408 Mass. 204, 205 (1990). Under this rule, a cause of action accrues when the plaintiff (i) knows or reasonably should know that she was harmed and (ii) knows or reasonably should know the cause of that harm. Riley v. Presnell, 409 Mass. at 243. “The reasonable person who serves as the standard in this evaluation ... is not a detached outside observer assessing the situation without being affected by it.” Id. at 245. “Rather, it is a reasonable person who has been subjected to the conduct which forms the basis for the plaintiffs complaint.” Id.; see also Bowen v. Eli Lilly & Co., Inc., 408 Mass. at 208 (noting that the court should look at “a reasonable person in the position of the plaintiff’).
*216 Once a plaintiff is aware that she has suffered an injury from a likely source, she is obligated to conduct further scientific inquiry as to the actual source of the harm. “Reasonable notice that a particular product or a particular act of another person may have been a cause of harm to plaintiff creates a duty of inquiry and starts the running of the statute of limitations.” Bowen v. Eli Lilly & Co., Inc., 408 Mass. at 210.
Determining whether a plaintiff knew or reasonably should have known the cause of the harm for which she seeks recovery is inherently problematic where, as here, the establishment of actual causation is itself also at issue. See Fidler v. Eastman Kodak Co., 714 F.2d 192, 198 (1st Cir. 1983) (construing Massachusetts law). If cause were defined in its strictest sense, a cause of action would only accrue after the cause of harm had itself been established at trial. Id. “Such a definition would entirely defeat the purposes of a statute of limitations ...” Id. Accordingly, under Massachusetts law, “notice of likely cause is ordinarily enough to start the statute running.” Bowen v. Eli Lilly & Co., Inc,, 408 Mass. at 208. “Likely cause” is established if a “reasonably prudent person . . . reacting to any suspicious circumstances of which he might be aware . . . should have discovered that he had been harmed by the [defendant’s conduct].” Id. What a reasonable person knew or should have known is a question of fact which in most instances will be decided by the trier of fact. Riley v. Presnell, 409 Mass. at 240.
Applying the foregoing standard to plaintiffs, the defendants argue that in 1995 reasonable persons in the position of either Hopkins or Lawton would have known or had reason to know that their harm was likely caused by the defendants’ conduct. The defendants suggest three sources for this knowledge: (i) “public knowledge” by dint of newspaper articles and lawsuits published and filed before February 12, 1996 that concerned similar illnesses suffered by persons who worked in the Probation Department in the Suffolk County Courthouse and attributed the illnesses to poor air quality resulting from the weatherproofing;[10] (ii) a policy that Courthouse employers did not deduct days taken off for fume-related illnesses from the sick time accrued by their employees; and (iii) inferences that persons in each of plaintiffs positions would draw from the timing and nature of the harm that they suffered.
As to the first source of knowledge, both plaintiffs deny that before February 12, 1996, they had read any newspaper article relating to complaints of illness due to air quality in the Courthouse. Both state that they do not read the newspapers in which the articles appeared. The Court must accept these statements at face value. Riley v. Presnell, 409 Mass. at 244 (“When considering a motion for summary judgment, the judge should not consider the credibility of the witnesses or the weight of the evidence, nor should the judge make findings of fact”). Compare Cummings Props. Mgmt., Inc. v. W.R. Grace & Co., No. 91-2641, 1994 WL 879462, at *6 (Mass. Super. Ct. Jan. 19, 1994) (Fremont-Smith, J.) (summary judgment allowed in part because plaintiff was a regular reader of newspapers in which articles suggesting a cause for his harm appeared); Estate of Phillip V. Sarocco v. Gen. Elec. Co., 939 F.Sup. 91, 96-97 (1997) (summary judgment allowed where plaintiff-estate’s response to defendant’s “mass of evidence” suggesting a reasonable person would have known the cause of his harm was that the decedent might not have known) (emphasis in original).
The defendants also rely on the policy relating to deduction of sick time. The defendants have not, however, made part of the record evidence that either Lawton or Hopkins was advised of this policy or that sick days taken by either Lawton or Hopkins due to fume-related illness were not deducted from their accrued contractual sick time.
Defendants’ third contention that in 1995 a reasonable person in each plaintiffs position would have known that she had suffered an injury and that the weatherproofing was a likely cause of the harm requires separate consideration of the plaintiffs’ circumstances.
Hopkins contends that the initial presentation of her symptoms was not so uncommon that the cause of her harm could not have been attributed to influenza and she did not causally connect her symptoms with the Courthouse until Dr. Burgess reported the connection on February 14, 1996. It is undisputed that Hopkins’ physical condition changed markedly beginning in April of 1995 when she began to work in the Courthouse. Before she began to work in the Courthouse, Hopkins had no medical history of asthma, sinusitis or rhinitis. The Court is required to accept the veracity of Hopkins’s statements that she did not realize that there was a likely causal relationship between her symptoms and the defendants’ weatherproofing of the Courthouse. See Riley v. Presnell, 409 Mass. at 244. But the issue is whether there is a material question of fact as to whether a reasonable person in Hopkins’ position would have known or had reason to know of the existence and likely cause of her harm before February 12, 1996.
Hopkins states that she believed statements of her supervisors, Tobin and Glynn, that weatherproofing contractors and subcontractors had told them that there was “absolutely nothing wrong with the air in the Courthouse,” that the workers who had gone out on sick leave or been transferred out of the Courthouse were “crazy” and that their symptoms “were all in their heads.”[11] It is therefore undisputed that Hopkins knew in 1995 that some co-workers in the Probation Department had been transferred to another building and others were on sick leave because of complaints of illness resulting from poor air quality caused by the *217 weatherproofing. Although Hopkins admits this knowledge in the context of affirming her belief in the statements of her supervisors, I find that, as a matter of law, a reasonable person who suffered a marked deterioration in her physical condition upon her employment in the Courthouse and was aware of the claims of her co-workers and the fact that some had been transferred to another building and others were on sick leave would have investigated the existence of a connection between her illness and the air quality in the Courthouse. Had she investigated, she would have discovered the extensive media coverage of alleged illnesses caused by the weatherproofing, as well as the details of the complaints which had been filed and were a matter of public record.[12]
Lawton presents a closer question because the Court is required to accept Lawton’s statements in her affidavit that her asthma was not significantly worse in 1995. Lawton had a history of asthma which flared up every couple of months due to a variety of allergies. The issue whether a reasonable person in her position would have known before February 12, 1996, that she had been injured and the likely cause of the injury is one of fact for the jury.[13] Given Lawton’s knowledge of the lawsuit and of the fact that some co-workers had been transferred and others were on sick leave, and given the history that she gave to Dr. Oliver which included marked and persistent worsening of her asthma within a month of commencing work in the Courthouse, the statements in her affidavit strain credulity, but the Court may not resolve questions of fact on a motion for summary judgment.
ORDER
For the foregoing reasons, pursuant to Mass.R.Civ.P. 56, it is hereby ORDERED that the defendants’ motions for summary judgment are allowed as to the claims of Sedisia Hopkins and denied as to claims asserted by Rhoda Lawton. It is further ordered that, in the interest of judicial economy, trial on Lawton’s claims shall be bifurcated. Trial on the issue whether Lawton’s claims are barred by the applicable statutes of limitations shall precede trial on liability and damages.

 A report by Dr. L. Christine Oliver, submitted by Hopkins, states that Hopkins began suffering symptoms “during the first week of her employment.” In another physician’s report, Hopkins lists the dates of her injuries as “4/95 to present.” Answering OLT’s interrogatories, Hopkins states that her symptoms began in “July 1995.”

 Lawton was examined by Dr. L. Christine Oliver on June 1, and July 13, 1999. Lawton reported to Dr. Oliver that her asthma was “relatively well controlled until 1995" and that "when she began work at the Courthouse in April 1995, she was using albuterol no more than four times per week on average." Dr. Oliver noted that Lawton reported that within a month of working at the Courthouse, Lawton was increasingly short of breath, her chest felt tighter, she coughed and wheezed more, her use of albuterol increased to six to eight times per day and “trouble breathing awakened her at night.” Lawton also reported to Dr. Oliver that within the first month of her employment at the Courthouse, she suffered abdominal pain and cramping, nausea and vomiting, and diarrhea. Around the same time, Lawton also experienced the onset of migraine headaches. Dr. Oliver noted that Lawton stated that her symptoms improved during weekends and worsened at work. Lawton made Dr. Oliver’s reports part of the summary judgment record. The histoiy of Lawton’s medical condition as reported to Dr. Oliver in 1999 differs significantly from the statement in her affidavit that her asthma did not change significantly until October 1996. The Court is nonetheless compelled to credit the affidavit in the absence of sworn testimony to the contrary. Compare O’Brien v. Analog Devices Inc., 34 Mass.App.Ct. 905, 906 (1993) (court will disregard statements in affidavit which contradict witness’ prior sworn testimony).

 Recorded on November 3, 1996.

 See Compl. Diane M. Barrett-Moeller & others v. TAT Constr. Co. & another, Civil No 95-3625 (Suffolk Super. Ct. filed June 30, 1995).

 By each of the defendants.

 By TAT Constr. Corp. and Pécora Corp.

 By TAT Constr. Corp., Dean Tucker Shaw, Inc., and ATC Assocs, Inc.

 Defendants have made numerous such newspaper articles part of the summary judgment record.
allegedly concealed. Lynch v. Signal Finance Co., 367 Mass. 503, 507-08 (1975).

 Plaintiffs’ asserted reliance on their supervisors’ representations confuse the discovery rule with concepts of equitable estoppel and fraudulent concealment. The doctrine of estoppel may be relied upon in a case in which the limitations period has in fact run to prevent a defendant from prevailing on a statute of limitations defense where the defendant’s own conduct wrongfully lulled the plaintiff into foregoing legal action until It was too late. Baglio v. New York Central RR Co., 344 Mass. 14, 19 (1962). In Olsen v. Bell Telephone Laboratories Inc., 388 Mass. 171, 176 (1983), the plaintiff argued that defendants were estopped from relying on the statute because representatives of the defendants had told him that asthma was not permanent and that the chemical he was exposed to did not cause asthma. The Court stated: “Unless the defendants made representations they knew or should have known would induce the plaintiff to put off bringing suit and . . . the plaintiff did in fact delay in reliance or the representation, there is no estoppel.” Id.., quoting White v. Peabody Constr. Co., 386 Mass. 121, 134-35 (1982). Accord Riley v. Presnell, 409 Mass. 239, 249 (1991).
By statute, where a person “fraudulently conceals the cause of such action from the knowledge of the person entitled to bring it," the period prior to discovery is excluded in determining the time limit for the commencement of the action. G.L.c. 260, §12. The statute is generally not available where the plaintiff is capable of discovering the facts. Moreover, denial of responsibility is not the same as a positive act of concealment. White v. Peabody Constr. Corp., 386 Mass. at 134. The doctrine of fraudulent concealment does not apply where plaintiff has knowledge of facts or means of discovery that under the circumstances should have put her on inquiry.

 As new employees, plaintiffs may well have been reluctant to complain to unsympathetic supervisors. But the issue is when the three-year statutes began to run, not whether the plaintiffs should have immediately requested transfers out of the Courthouse. Compare Olsen v. Bell Telephone Laboratories Inc., 388 Mass. at 176, where the Court rejected as without merit an argument that plaintiff would have felt *218 awkward suing parties that had a continuing business relationship with his employer, while he still hoped for continued employment. The Court stated: “If we were to take cognizance of this kind of fact in determining the date of accrual of a cause of action there would be little left to statutes of limitations.”

 In the affidavit submitted by Lawton in opposition to this motion, Lawton describes her condition between April and July of 1995 as a flare up of her asthma which was not sufficiently different from past flare-ups to put her on notice that she had suffered harm. But she reported to Dr. Oliver that “lh]er asthma was relatively well controlled until 1995, with the exception of a flare in March, 1991 associated with an upper respiratory tract infection and bilateral otits media and requiring a four-day admission to the MGH for treatment.”